(May 26, 1941.)

HARRY COHEN, Respondent, v. RUTH COHEN, Also Known as RAY COHEN, Also Known as RACHELLA COHEN, Appellant.

Appeal by the defendant from an order of the Supreme Court, entered in the Kings county clerk's office on October 7, 1940.

Order denying motion to vacate interlocutory and final judgments entered June 17, 1938, and September 26, 1938, respectively, reversed on the law, with ten dollars costs and disbursements, and motion granted to the extent of vacating said judgments, awarding a counsel fee of $100 to the defendant on this appeal, and remitting the cause to the Special Term for the purpose of making appropriate provision for the suitable care and maintenance of defendant during her life, as provided by section 7, subdivision 5, of the Domestic Relations Law, such provision to date from December 18, 1938, the time of her discharge from a State institution. Upon the determination of an appropriate amount to be paid during

the life of the wife, as required by said section 7, subdivision 5, judgment of annulment should be entered accordingly.

The judgments were validly entered as to annulment and custody of the child, but the only provision for the support of the defendant was to the Department of Mental Hygiene. There was a failure to provide for defendant's support and maintenance in the event of her discharge from an institution.

Lazansky, P. J., Adel and Close, JJ., concur; Hagarty, J., in opinion, concurs for reversal of the order and the vacatur of the interlocutory and final judgments, but dissents from the direction to enter a new judgment of annulment, and votes to grant a new trial upon service of an answer by defendant, without costs and without prejudice to an application for expenses, alimony and counsel fee, upon a proper showing, pursuant to section 1169 of the Civil Practice Act. Taylor, J., concurs with Hagarty, J.

HAGARTY, J. (dissenting in part). Defendant appeals from an order denying her motion to vacate the final and interlocutory judgments entered against her adjudicating her marriage with the plaintiff to be a nullity. The parties were married on the 17th day of December, 1927, and their only child was born on the 15th day of November, 1929.

Defendant was a patient from August 4, 1930, to January 21, 1931, in a private institution for the care of persons who are mentally afflicted. Thereafter she was admitted to the Rockland State Hospital on March 21, 1932. She was released from that institution on January 15, 1933, readmitted on July 27, 1934, and again released on October 19, 1935. She was readmitted on July 16, 1937, and was confined therein at the time of the commencement of this action on April 5, 1938, and for a period of time thereafter, inclusive of the trial before an official referee on May 26, 1938, the making of the interlocutory judgment on June 17, 1938, and the entry of the final judgment annulling the marriage on September 26, 1938. Hereinafter, reference to the judgment shall include both judgments.

Subsequently, and on the 18th day of December, 1938, the defendant was released. This discharge, presumably, was made pursuant to the Mental Hygiene Law (§ 87), which authorizes discharge for reasons other than complete recovery. Nevertheless, defendant claims on this motion that she has completely recovered and, in corroboration of her claim, annexes to her moving papers an affidavit of a psychiatrist to that effect.

The principal reasons advanced by the appellant in support of her motion to vacate the judgment seem to be that her husband committed perjury in testifying to conduct on her part, which testimony influenced the conclusion of the trier of the facts that she was and had been incurably insane for five years prior to the commencement of the action, and that the special guardian appointed on her behalf neglected her interests. These claims cannot be sustained. The appellant challenges the truth of the respondent's testimony. He reiterates its truthfulness. Under these circumstances, the judgment cannot be set aside on that ground. As Crane, Ch. J., observed in *Jacobowitz* v. *Herson* (268 N. Y. 130, 134), " If perjury were accepted as a ground for relief, litigation might be endless; the same issues would have to be tried repeatedly." Nor was there any showing of neglect on the part of the special guardian which can be said to have affected the adjudication of insanity, particularly in the light of the fact that he was led to believe that the family of the appellant would engage counsel and defend the action. I am,

however, of opinion that there are grounds disclosed by this record which require that the judgment be vacated and a new trial granted. This may be done in the interest of justice. (*Ladd* v. *Stevenson*, 112 N. Y. 325, 332.)

The Domestic Relations Law (§ 7, subd. 5), as amended in 1929, hereinafter referred to as the statute, provides that the court may declare a marriage to be a nullity if either party thereto has been incurably insane for a period of five years or more, and marks a departure from the pre-existing concepts of the permanence of the marriage relationship and from the relief theretofore afforded by way of annulment on the ground of insanity at the time of the marriage. (Civ. Prac. Act, §§ 1136 and 1137; *Hoadley* v. *Hoadley*, 244 N. Y. 424.) Although the relief contemplated by the statute is characterized as an annulment, it is more analogous to a dissolution or divorce, in that it does not purport to undo the marital relationship *ab initio*. Needless to say, courts should be vigilant to require scrupulous observance of the expressed and implied requirements of the statute, as well as to safeguard the rights of an insane wife, particularly, by seeing to it that provision is made for her suitable care and maintenance while she lives.

The statute requires " that judgment annulling a marriage on such ground shall not be rendered until in addition to any other proofs in the case," an examination of the alleged insane party shall have been made by three physicians, authorities on mental disease, appointed by the court, all of whom shall agree that the defendant is incurably insane, and shall so report to the court. Such a report was made in this case which, together with the testimony of the plaintiff, constituted the sole basis for the finding of insanity, upon which finding the judgment was entered. My opinion is that this requirement of the statute is intended to provide a supplement to the proof adduced, and that it was not the intention of the Legislature that such report alone should constitute the proof upon which might be predicated a finding of insanity. The plaintiff, who was the sole witness at the trial, was not qualified to testify that his wife was insane. Manifestly, his testimony was insufficient. It was the right of the defendant to be confronted by the witnesses against her, and she or her representative afforded the opportunity to cross-examine. An adjudication may not be predicated on hearsay testimony, having particular reference to " all available information including hospital records," which the doctors say they took into consideration in formulating their report. The report is intended only as an additional safeguard, merely to advise the conscience of the court before the judgment is finally entered. It is an indication of the care, in that respect, which the Legislature had in mind in enacting the provision. It was never intended that an adjudication of incurable insanity should be made upon such a report alone which, under the statute, need not even be verified. In the present case it is not recited, nor is there any reference whatsoever to it in the judgment. Justice requires that such a judgment, adjudicating defendant to be incurably insane and depriving her of her marital status on that account, upon a record devoid of competent proof, should be vacated and annulled.

Furthermore, the judgment is fatally defective in that it fails to provide for suitable care and maintenance of the defendant, in accordance with the obligation imposed upon plaintiff by the statute. The judgment does not comprehend the contingency which has eventuated, namely, the discharge of the defendant from the State institution. Other than noting the filing of a bond in the sum of $750 for the suitable care and maintenance of defendant, it goes no further than to

provide that plaintiff pay to the State Department of Mental Hygiene the sum of fifteen dollars a month for defendant's suitable care and maintenance during her lifetime. This defect may not be corrected if the judgment be permitted to stand, as there is no reservation in the judgment itself for the making of subsequent modifications. (*Walker* v. *Walker*, 155 N. Y. 77; *Livingston* v. *Livingston*, 173 id. 377; cf. *Fox* v. *Fox*, 263 id. 68.) It was not until September, 1940, that section 1140-a of the Civil Practice Act went into effect and provided for the reservation of power in the court to modify judgments of annulment thereafter made and to make suitable provision for support. Denial of the relief sought, in effect, relieves the plaintiff from all obligation to provide even the necessaries of life for his former wife, declared insane. The plaintiff admittedly earns $3,830 per annum.

This statute fails to present a well-considered and comprehensive provision for the safeguarding of the natural rights and interests of a wife who has been adjudged to be insane and thus deprived of her marital status. It goes no further than to recognize the need for her care and maintenance by providing for the exaction of security. This implies the necessity for a direction of the payment of money periodically by the plaintiff for that purpose. But to whom are such amounts to be paid? Certainly not to one who has been adjudicated insane. In the absence of an appropriate provision of law, there seems to be no alternative for the court in making a final judgment but to direct payment to a committee of an incompetent, appointed or to be appointed, pursuant to the provisions of the Civil Practice Act (Art. 81).

It is not to be assumed that the wife, against whom the judgment is entered, is thereafter and for all times to be confined in a State institution. (Mental Hygiene Law, *supra*.) Plaintiff's means may entitle her to care in a private institution. Friends or relatives may look after her at home. She may recover, and she claims, here, that she has recovered. Even if she be confined permanently in a State institution, it well may be that a sum in excess of that required by the State for her bare maintenance should be directed to be paid for her personal needs and comforts. In the making of a judgment such as this, consideration should be given to the well-being as well as the care and maintenance of the insane wife, within the means of the plaintiff, and provisions in her behalf should not be limited to the reimbursement of a State institution for her bed and board.

I regard the order now before us on this appeal as analogous to an order denying a motion to open a default and for leave to interpose an answer and, as such, appealable. (*King* v. *Sullivan*, 31 App. Div. 549.) Authority invoked by respondent (*Foote* v. *Lathrop*, 41 N. Y. 358; *Schaettler* v. *Gardiner*, 47 id. 404; *Williams* v. *Montgomery*, 60 id. 648) involved dismissals by the Court of Appeals on appeal from affirmances at General Term of orders denying motions to vacate and for a new trial on the ground that the granting of the motion was within discretion and that the Court of Appeals had no jurisdiction. The relief sought by appellant with respect to temporary alimony, counsel fee and expenses may be granted at Special Term, in accordance with the provisions of section 1169, Civil Practice Act, as amended and in effect September, 1940. (See *Fox* v. *Fox*, *supra*.)

The order denying the motion to vacate and set aside the final and interlocutory judgments declaring the marriage of the parties to be a nullity and for incidental relief should be reversed on the law and the facts, without costs, and the motion

should be granted to the extent of vacating the judgments declaring the marriage of the parties to be a nullity and directing retrial upon service of an answer by defendant and otherwise denied, without costs and without prejudice to an application for expenses, alimony and counsel fee, upon a proper showing, pursuant to section 1169 of the Civil Practice Act.

Taylor, J., concurs with Hagarty, J.