57 N.J. Super. 557 (1959)
155 A.2d 115
THERESA PUZIO, PLAINTIFF-RESPONDENT,
v.
CIRO PUZIO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1959.
Decided October 29, 1959.
*559 Before Judges CONFORD, FOLEY and HALPERN.
Mr. Louis Santorf argued the cause for defendant-appellant.
Mr. J. Mortimer Rubenstein argued the cause for plaintiff-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
The Chancery Division granted plaintiff, a New York resident, an award of separate maintenance from her husband, the defendant, a resident of Paterson. The judgment also included a money award based upon a judgment entered in the Supreme Court of New York for $3,382.50 and interest, representing accumulated arrearages due on a prior support order entered pendente lite in New York proceedings for separation brought by the plaintiff. Certain other provisions of the judgment under appeal are not complained of by the defendant.
The parties, both of whom are now about 36 or 37 years of age, were married in New York City in August 1948. At first they resided with the wife's parents in the Bronx, but relationships between the defendant and plaintiff's relatives were unsatisfactory, and the parties removed to a *560 small apartment on West 89th Street in Manhattan. The wife visited her family frequently, the husband seldom. His position was that they owed him money on loans and annoyed him continuously for further advances, and that he therefore tried to avoid them. On December 24, 1951 plaintiff went to visit her family in the Bronx (New York City) and the parties never resumed cohabitation. She says she had arranged to meet him at her grandmother's that evening, but he never appeared. His version was self-contradictory. At one point his testimony was that they agreed she would visit her parents alone, would return that evening, and that they would spend the next day (Christmas Day) together. At another, he said her parting remark to him on that occasion was that unless he agreed to come with her to live with her parents she was going to leave him, to which he responded, "Don't be silly, think over what you are doing." It is undisputed that when she left the apartment on December 24, 1951 she took none of her clothing or personal effects with her. She testified she became ill, stayed at her mother's and phoned him during the next few days but could not reach him. He testified he did not phone to inquire about her absence because he did not wish to speak to her mother; nor did he go to see about her for fear of being beaten. At another point he said he did phone, but hung up when her mother answered. A third explanation was that he asked for his wife on the phone but the mother-in-law would not "put her on the phone." He consulted a lawyer early in January 1952, before he saw his wife again.
In November 1951 defendant had appropriated to himself a $500 Christmas Club account belonging to plaintiff, and not long after the separation he withdrew from two banks all of their savings, amounting to several thousand dollars, and loaned a substantial part of it to his brother.
It is unnecessary to recount all the testimonial details of the sharply contradictory versions of the parties and their witnesses concerning their alleged efforts at reconciliation, *561 personally and through the intermediation of friends and lawyers. Plaintiff had three different counsel and defendant two during 1952. There were two or three reconciliation conferences. The general import of the proofs on plaintiff's behalf was that at all times after the separation defendant took and adhered to the position that he was through with his wife, even going to the extent of changing the locks on the 89th Street apartment to prevent her gaining access thereto. Defendant's story was that his wife at all times made her resumption of cohabitation with him conditional upon their taking up residence with her parents, which he refused. He was partly supported as to this by testimony of his second New York counsel in respect to conferences in late May and early August 1952.
Defendant testified that his last effort at reconciliation occurred in September 1952, when he met plaintiff at her place of employment pursuant to arrangements made by the lawyers. At his renewed request that they live together apart from her parents, she called him "crazy," and since then he has "wanted no part of her," and "wouldn't live with her."
On October 15, 1952, pursuant to a summons "in blank" issued the previous May, plaintiff through her last New York counsel filed a complaint in the New York Supreme Court for a separation from bed and board and for support. The recitals of the complaint, which was verified by plaintiff, are material to defendant's position on both branches of this appeal. They include acts of physical brutality, verbal abuse, false accusations by defendant of plaintiff's being syphilitic, "perverted sexual demands" by defendant which left plaintiff "completely shattered and under great physical and mental strain," locking plaintiff out of their home, and forcing plaintiff twice to "avoid" incepted pregnancies by taking medications. The tenth paragraph of the complaint charges, in conventional verbiage, that defendant's acts made it unsafe and improper for plaintiff to continue to cohabit with him, but also that plaintiff is unable to live *562 with defendant because he "has thrown plaintiff out of their home, closed the doors to her" and refuses her entry and support. In addition to the general verification of the complaint, plaintiff filed a plenary affidavit reciting the foregoing allegations of misconduct in extenso with additional circumstantial details. Supporting affidavits were filed by her mother and two family friends.
Defendant appeared in the New York action by counsel, but he did not answer the complaint. His counsel was also served with notice of an application for support pendente lite. This was not opposed, so far as the record before us discloses, and an allowance of $15 per week was made in November 1952, but never honored by defendant. He was employed as a restaurant waiter at all times here material. He testified to earnings of from $3,200 to $4,000 per year. Plaintiff was employed from time to time during the cohabitation of the parties as an underwear operator.
In accordance with the New York practice, a judgment for arrearages on the order pendente lite was entered in favor of plaintiff and against defendant in the New York Supreme Court March 10, 1955, service of the application therefor having been made on defendant's New York counsel.
Defendant moved to 24 Thomas Street, Paterson, in this State, in November 1952. He has resided there ever since, except for an indeterminate period prior to May 1954, during which his place of residence is a matter of doubt. He obtained a Florida divorce May 31, 1954 on grounds of extreme cruelty, presumably based upon some sort of residence in that state. But he testified he made three trips from Florida to New Jersey and "stayed for a while up here." However, in reporting to the immigration authorities in January 1954, pursuant to federal regulations for control of resident aliens, he gave the Paterson address as his residence. In July 1954 he married the daughter of the other occupants of the two-family house in which he lived in Paterson, and he cohabited with her there until he consulted New Jersey counsel after service upon him in December *563 1954 of the complaint in the present action. Being then advised that the Florida divorce was invalid for failure of proper service upon the plaintiff, he ceased cohabitation with his second wife, so he testified, and since has lived in the apartment of her parents at the same address. It was conceded on defendant's behalf in open court that the Florida divorce is invalid for failure of proper service upon the plaintiff.

I.
We consider first the cause of action for maintenance. Judge Hegarty, the trial judge, filed a written opinion in which, after recounting the testimony in connection with the events precipitated by the Christmas Eve 1951 visit of plaintiff to her grandmother (or her mother), and the marriage and cohabitation of defendant with another woman after the concededly invalid Florida divorce, he concluded that defendant had without justifiable cause abandoned plaintiff or separated himself from her. Plaintiff was awarded support of $15 per week. Any doubt from the language of the opinion that the court was deciding the disputed issues of fact relative to the original separation of the parties and its aftermath in favor of the plaintiff, and basing its conclusion of abandonment of plaintiff by defendant thereon, independently of the effect of the defendant's later remarriage, is dispelled by the supplemental opinion filed after reargument. There it is expressly found that the defendant abandoned the plaintiff and refused to reconcile with or support her. The remarriage and cohabitation were found to constitute circumstances which made the abandonment complete and effectual. We deem the first mentioned findings, if supported by the evidence, fully to support the judgment for maintenance, apart from the circumstances relative to the second marriage and consequent cohabitation with another woman.
Concededly, the proofs were in serious conflict and the credibility of the plaintiff sharply affected by the differences *564 between some of the recitals in her affidavits in the New York proceedings and her testimony in the present action as to the relationships of the parties antecedent to the separation. (More as to this anon.) There were also discrepancies between plaintiff's affidavit upon her application for a writ of ne exeat in the present action and some of her testimony. Nevertheless, the opinions of Judge Hegarty indicate that he gave due consideration to the factor of plaintiff's credibility. We regard his findings as to abandonment of the plaintiff adequately supported by the record, and to call for affirmance, particularly in view of the importance in such a case as this of the superior opportunity of the trier of the facts to adjudge the comparative credibility of the witnesses.
In view of our conclusions as stated we need not pass upon the defendant's appellate contention that the trial court erred in amending the complaint after the final hearing so as to permit the additional charge of abandonment constituted by defendant's adultery. Although defendant does not indicate how he is prejudiced in this regard by suggesting what counter-showing he could have made, legal or factual, had the amendment been made earlier in the proceedings, we prefer to rest our affirmance of the judgment as to the maintenance cause of action upon its sufficient justification, on the record, in the evidence as to occurrences prior to the defendant's remarriage and cohabitation with the other woman. As early as September 1952, as noted above, defendant by his own admission "wanted no part of plaintiff" and was resolved not to live with her again. Coupled with the court's findings in respect to the original separation and refusal of reconciliation by defendant thereafter, the testimony just mentioned (even having in mind defendant's explanation that his attitude was induced by plaintiff's calling him "crazy") establishes conclusively that long before his cohabitation with the other woman defendant had decided he no longer desired plaintiff's presence in his home. Consequently, her continued absence under any *565 circumstances short of a legal matrimonial offense on her part did not abate his obligation to maintain and support her. Barefoot v. Barefoot, 83 N.J. Eq. 685, 686 (E. & A. 1914), and other authorities collected in Eldredge v. Eldredge, 38 N.J. Super. 509, 513 (Ch. Div. 1955).
Our determination concerning plaintiff's cause of action for maintenance automatically disposes of defendant's argument that he proved such a case of desertion by the plaintiff as bars her from relief. The trial findings we have sustained preclude that defense being sustained on this record.
The judgment in respect to maintenance stands affirmed.

II.
We turn to consider the appeal as it relates to the judgment in favor of plaintiff entered upon the New York money judgment.
As to this feature of the case defendant contends in substance that the New York judgment was "procured by fraud," referring to the plaintiff's affidavits supporting the New York Supreme Court order for support pendente lite and should therefore not have been enforced by the trial court. The legal assault is based partly upon the doctrine of unclean hands and partly upon judicial decisions giving color to the proposition that the courts of one state may, notwithstanding the full faith and credit clause of the United States Constitution, deny recognition to foreign judgments for "fraud" in their procurement. Judge Hegarty held that there was no evidence of fraud which would "taint the validity of the New York judgment."
Preliminarily, it will repay the effort to analyze the record so as to fix the precise degree and kind of "fraud," if any, here involved, in view of defendant's emphasis upon its assertedly deliberate and self-admitted nature as bearing upon the argued unseemliness of according plaintiff access to our courts for enforcement of a judgment founded upon it.
We have already recounted in the main the actual allegations in the New York affidavits. During the present trial *566 plaintiff on direct examination gave no testimony as to defendant's conduct toward her prior to the separation in December 1951. On cross-examination defendant's counsel suggested to plaintiff that she and her husband loved and were kind to each other while living together, and drew affirmative responses. He then confronted her with her allegations in the New York affidavits apparently indicative of the contrary, but seemingly only to impugn her credibility in relation to the instant maintenance cause of action. Those allegations were obviously not contradictory of anything the plaintiff had testified to on direct examination, except, possibly, her good faith in telling defendant she loved him when she visited the apartment shortly after the separation in a supposed attempt to effect a reconciliation. Nor were they refutative of her present claim of abandonment, which was based solely on events subsequent to the separation.
When confronted with her sworn statements as to defendant's prior acts of cruelty she testified in response to questions as to separate and distinct acts that: it was true that he "beat [her] up"; he said he was sorry he married her; he frequently called her vile and degrading names; he accused her of being syphilitic yet insisted on sexual intercourse with her; he made perverted sexual demands on her to the injury of her health, and that he forced her to have abortions; and that she endured these things for religious reasons and to avoid a break-up of the marriage. She also testified that despite these matters she still loved defendant at Christmas of 1951 and wanted to live with him. Later in the cross-examination she recanted as to the matter of demands for perverted sex relations but adhered to her New York charges as to the other subjects mentioned. Later, in answer to a question on cross-examination which referred to all of her allegations in the New York affidavits collectively, contrasted her earlier testimony that the parties loved and were kind to each other prior to December 1951, and requested a categorical response as to which was true, plaintiff responded: "Until 1951 everything was all right."
*567 Upon the foregoing defendant predicates an assertion that plaintiff's "New Jersey testimony was diametrically opposed to and entirely different from her testimony in New York," and that she "admits" she obtained the New York judgment "by fraud in the New York court." Defendant claims too much. Comparison of plaintiff's testimony here with the New York affidavits as to specific charges against the defendant shows she was consistent as to most of them, particularly the most redolent. In view of her obvious lack of comprehension of many of the questions addressed to her, and the sustained pressure of the extended cross-examination, it is a matter of considerable uncertainty as to what she meant when she concluded that "until 1951 everything was all right," in the light of her previous answers. It must be conceded that the cross-examination refuted or cast in doubt the veracity of some of the New York allegations, but this is not to say, as does defendant, in effect, that plaintiff obtained her New York award pendente lite (upon which the judgment was based) upon a facade of deliberate lies now admitted by her as such.
Moreover, the present record does not indicate that defendant, when he was given notice of either the application for the award pendente lite or that for entry of final judgment on the arrears, did anything to disabuse the New York court of the plaintiff's supposed fraud upon it. Nor did he request the court in the present action to defer entry of judgment so that he might take suitable steps for relief at the hands of the New York court which entered the money judgment for support arrears. It is significant that, whatever the truth of the New York affidavits, it has been determined in the instant proceedings that defendant did unjustifiably abandon plaintiff in 1951 and 1952, and thus there is no ultimate injustice in her having the benefit of an award representing support for the period of the abandonment.
It is apparent that defendant did not, during the trial, conceive that he was establishing a defense of fraud in the procurement of the New York money judgment through *568 plaintiff's perjury. This claim was not even an issue at the trial but was brought into the case by defendant's application in the brief submitted at the end of the trial to amend the answer to assert the defense of fraud. It is understandable, therefore, but not to be overlooked, that defendant did not, when he took the stand or at any other time, undertake to deny, one by one, the allegations in the plaintiff's New York affidavits he now charges were perjurious, or to explain why he let the order pendente lite and the final judgment go unchallenged in New York despite the asserted fraud. Query, whether a factually persuasive and equitably meritorious case of fraud has been shown, aside from the legal questions to be considered hereinafter? Would we vacate a New Jersey judgment in similar circumstances, under R.R. 4:62-2? See discussion infra.
We nevertheless turn to consider whether, as plaintiff argues, the full faith and credit clause of the United States Constitution, Article IV, Section 1, and its complementary statute, 28 U.S.C., § 1738, preclude the denial here of recognition and enforcement of the New York judgment, even assuming, arguendo, that entry of that judgment was the result of false affidavits by the plaintiff.
A general statement of the scope of the constitutional mandate for recognition by one state of the judgments of a foreign state is found in Klaiber v. Frank, 9 N.J. 1, 10 (1952):
"The full faith and credit clause has established throughout the federal system the common-law principle that a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in the court where the judgment was rendered. Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488, 168 A.L.R. 656 (1947); Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149, 150 A.L.R. 413 (1943). But it is fundamental that the principle is not operative unless the judgment be founded upon adequate jurisdiction of the parties and subject matter. Gasquet v. Lapeyre, 242 U.S. 367, 37 S.Ct. 165, 61 L.Ed. 367 (1917); Roche v. McDonald, 275 U.S. 449, 48 S.Ct. 142, 72 L.Ed. 365, 53 A.L.R. 1141 (1928); Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357 (1940). The judgment is not invested with this constitutional *569 sanctity if fraud has given rise to a jurisdictional infirmity. Compare Jaster v. Currie, 198 U.S. 144, 25 S.Ct. 614, 49 L.Ed. 988 (1905). Where fraud inheres in the jurisdiction, the judgment is utterly void and inefficacious. A foreign judgment is subject to collateral attack for fraud in the procurement of the appearance of the defendant. Gray v. Richmond Bicycle Co., 167 N.Y. 348, 60 N.E. 663 (Ct. of App. 1901); Wyman v. Newhouse, cited supra. A judgment so tainted has no constitutional recognition."
Difficulties in understanding and application of the constitutional mandate have arisen, however, because of undiscriminating indulgence by judicial opinions of the protean phrase, "fraud in the procurement of the judgment," in passing upon problems of status and vulnerability of foreign judgments. See the comprehensive annotation in 55 A.L.R.2d 673 (1957). Confusion, moreover, has been compounded by the failure to distinguish between problems of domestic judgments law and requirements of full faith and credit in applying the classical differentiation between extrinsic and intrinsic fraud as a ground for attacking a judgment. Ibid., at page 676. For example, compare the different nature of the problems for decision in Shammas v. Shammas, 9 N.J. 321, 328 (1952), and Zelek v. Brosseau, 47 N.J. Super. 521, 531 (App. Div. 1957), affirmed, per curiam, 26 N.J. 501 (1958).
The narrow question before us here, under the factual assumption indulged above, is whether a money judgment in New York resulting from false or perjured testimony may by reason of that circumstance alone be refused recognition in an action on that judgment here. No question concerning lack of jurisdiction of the New York court over the subject matter or the parties, or as to the regularity of the proceedings or authenticity of the judgment record, is implicated. Nor have we, as in Klaiber v. Frank, supra, a fraudulent procurement of jurisdiction in personam over a party in the rendering state. The only question here is whether false testimony by the procurer of the judgment is the kind of "fraud in procurement of the judgment" which permits a New Jersey tribunal wherein an action is brought thereon *570 to go behind the face of the foreign record and deny the remedy sought on that ground.
The basic, controlling principle is that the forum must accord the foreign judgment the same degree of credit, status and immunity from attack which the judgment would be accorded in the state where rendered. Johnson v. Muelberger, 340 U.S. 581, 584, 71 S.Ct. 474, 95 L.Ed. 552 (1951); Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488, 168 A.L.R. 656 (1947); Roche v. McDonald, 275 U.S. 449, 48 S.Ct. 142, 72 L.Ed. 365, 53 A.L.R. 1141 (1927). Thus full faith and credit is not denied where the forum allows defenses to an attempt to enforce the foreign judgment which would be entertained by the courts of the rendering state in a similar proceeding. People of State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 614, 615, 67 S.Ct. 903, 91 L.Ed. 1133 (1947); Casteel v. Casteel, 45 N.J. Super. 338, 350 (App. Div. 1957); Goodrich, Conflict of Laws (3d ed. 1949), § 218, pp. 614-617; 2 Beale, Conflict of Laws (1935), § 440.1, p. 1401. This principle has been recognized by our courts, Zelek v. Brosseau, supra (47 N.J. Super. at pages 532, 533); Second National Bank of Philadelphia v. Thompson, 141 N.J. Eq. 188 (Ch. 1947), in the context of attacks upon foreign judgments as having been "procured by fraud." The Zelek case involved alleged perjury in the proof of the cause of action, as here, and the Thompson case a confession of judgment by warrant incorporated in a bond supported by a false affidavit, the circumstances satisfying the court that the rendering state would regard the judgment as void (141 N.J. Eq. at page 202). In Zelek, however, the court denied relief, applying a presumption that the rendering state would not have entertained the attack on the ground asserted.
Decision of the matter before us does not call for exploration of the conceptual differences between "extrinsic" and "intrinsic" fraud. As to this, see Zelek v. Brosseau, supra (47 N.J. Super. at page 531). Nor is it, for present purposes, of more than collateral interest that, generally, *571 perjury in the action as to the merits of the cause of action is classified as intrinsic fraud, not justifying equitable relief from a judgment, domestic or foreign (ibid., at page 531; 55 A.L.R.2d, op. cit., supra, at page 676); or that our domestic rule permits a motion in the cause to reopen a judgment for fraud, including perjurious testimony, on equitable principles and in the sound discretion of the court. R.R. 4:62-2; Shammas v. Shammas, supra (9 N.J. at pages 327, 328). All we need to ascertain here in order properly to apply the full faith and credit principles discussed above is whether the New York court, in an action like the instant one, would deny enforcement of the judgment because it was (on the assumption presently indulged) the product of perjurious testimony on the merits of the cause of action. This requires examination of the law of New York, which we have ascertained from the supplemental briefs of counsel and our own research.
Ordinarily, there are three procedural devices for impeaching a final judgment attacked for fraud: (a) by way of defense to its enforcement; (b) by instituting an independent, plenary action to set it aside; and (c) by motion to the court which rendered it (New York Civ. Prac. Act, § 521). Perjury in the action is classified by the New York courts as intrinsic fraud, and the first two methods are unequivocally foreclosed as a method of attack upon the judgment for such a reason. Crouse v. McVickar, 207 N.Y. 213, 100 N.E. 697, 698, 45 L.R.A., N.S., 1159 (Ct. App. 1912); Jacobowitz v. Metselaar, 268 N.Y. 130, 197 N.E. 169, 170 (Ct. App. 1953); Arcuri v. Arcuri, 265 N.Y. 358, 193 N.E. 174, 175 (Ct. App. 1934); In re Holden, 271 N.Y. 212, 2 N.E.2d 631, 633 (Ct. App. 1936); Rogers v. Rogers, 164 N.Y.S.2d 356, 359 (Sup. Ct. 1957); Ambatielos v. Foundation Co., 203 Misc. 470, 116 N.Y.S.2d 641, 651 (Sup. Ct. 1952); Rivero v. Ordman, 277 App. Div. 231, 97 N.Y.S.2d 864, 865 (App. Div. 1950); D'Auria v. D'Auria, 200 Misc. 939, 103 N.Y.S.2d 741, 746 (Sup. Ct. 1951); In re Gray's Will, 169 *572 Misc. 985, 8 N.Y.S.2d 850, 852 (Sup. Ct. 1939); Griffith v. Bank of New York, 147 F.2d 899, 903, 160 A.L.R. 1340 (2 Cir. 1945).
While relief by motion addressed to the court where the judgment is entered is theoretically available "in a proper case," under the New York Civil Practice Act, supra; Crouse v. McVickar, supra; Cohen v. Cohen, 262 App. Div. 765, 27 N.Y.S.2d 856 (App. Div. 1941), nevertheless, until such proceedings are successfully undertaken, a judgment impugned only for perjury in connection with the merits of the cause of action is impregnable before the New York courts.
In the instant case, consequently, considerations grounded in logic and the supervening policy of the federal constitutional mandate call for preclusion of the defense on the stated ground in the present action on the New York judgment. We may not, of course, take the distinction which the New York courts make between motions addressed to the specific rendering court and other defensive procedures, in respect to relief against judgments resulting from perjured testimony, to be insubstantial or superficial. It is presumably based upon sound policy, which must have our respect. While our own rule as to permissible methods of attacking domestic judgments on similar grounds is not quite so intransigent, it is very similar. Shammas v. Shammas, supra (9 N.J. at pages 327, 328). In any event, where the New York courts for their own local policy reasons treat a local money judgment as impregnable against assault on the ground of perjury in its procurement except on motion addressed to the rendering court, full faith and credit requires that we do likewise when an action is brought here to enforce that judgment, at least in the absence of a showing that such a motion is pending before the rendering court and of a request for a continuance here pending its outcome. Allard v. La Plain, 147 Wash. 497, 266 P. 688 (Sup. Ct. 1928). See also Cody v. Hovey, 216 N.C. 391, 5 S.E.2d 165, 168 (Sup. Ct. 1939).
*573 In the Allard case an action was brought in Washington on a Maine money judgment. One of the defenses was that plaintiff had testified falsely to material facts to an extent which would entitle defendant to have the judgment set aside under a Maine statute which permits the filing of a petition for review within three years after entry of a judgment for relief on certain grounds, including the rendition of adverse false testimony surprising the party and revealed to be false by later discovered evidence. No such petition had yet been filed. The Washington court rejected the defense, saying (266 P. at page 695):
"Plainly, we think such fraud does not, under that statute, impair the validity of the judgment prior to its setting aside upon such review as [is] therein contemplated. Manifestly, a judgment, subject to be so reviewed by the court in which it was rendered, stands as any other final judgment until, by the exercise of the further jurisdiction of that court, it is suspended or set aside. The judgment is not rendered void by such fraud, but merely rendered voidable by appropriate subsequent proceedings which may be instituted within the three-year statutory period. We do not think the courts of this state can lawfully take notice of any such fraud looking to the ignoring of the full faith and credit to be given to that judgment, as required by the Federal Constitution. There is no allegation in this affirmative defense that any review of that judgment, as contemplated by the Maine statute, above quoted, has ever been sought in the Maine court. If the pendency of such a review proceeding were pleaded in this affirmative defense, it is possible that the courts of this state might delay their giving full faith and credit to the judgment of that court until the review proceeding was therein disposed of; but that is a problem wholly foreign to our present inquiry."
Argument in support of the soundness of an approach along the foregoing lines as conducive to "a sound practical construction of the full faith and credit clause, so far as money judgments are concerned," is to be found in Professor Paulsen's article, "Enforcing the Money Judgment of a Sister State," 42 Iowa L. Rev. 202, 205, 206 (1957).
While the Supreme Court, in affirming in the Zelek case, supra, for the reasons given in the Appellate Division opinion, did not discuss the problem at length, it is significant that *574 the per curiam opinion says, as to the claim of fraud upon the Vermont court: "If, as asserted, a fraud was practiced upon the Vermont court, the remedy, if any, is in that state" (26 N.J. at page 502).
To be distinguished is the kind of situation where the "fraud in the procurement" of the foreign judgment is such that the rendering state would permit it to be assailed locally under the equity jurisdiction either by equitable defense in an action to enforce it or by independent bill in equity (or a plenary action of that nature) (e.g., where plaintiff has induced defendant not to defend by an agreement to withhold prosecution of action  fraud of the kind generally denominated extrinsic). In such case full faith and credit is not violated by the entertainment in the forum tribunal, having equitable and legal powers, of an equitable-defensive claim for affirmative relief against the judgment in an action brought upon it. Levin v. Gladstein, 142 N.C. 482, 55 S.E. 371, 32 L.R.A., N.S., 905 (Sup. Ct. 1906), a leading case; see also Schendel v. Chicago, M. & St. P. Ry. Co., 168 Minn. 152, 210 N.W. 70, 73 (Sup. Ct. 1926); Shary v. Eszlinger, 45 N.D. 133, 176 N.W. 938, 943 (Sup. Ct. 1920); Restatement, Conflict of Laws (1934), § 440, p. 522. The forum does not thereby in substance treat the foreign judgment any differently from the way the rendering state would permit it to be treated at home, the circumstance that the rendering state preserves the distinction between courts of equity and law and would therefore require relief at home to be sought in the equity court not being of importance in this regard. See Levin v. Gladstein, supra.
The nub of the situation in the present case is that under the New York law only the judgment-rendering court, by a motion addressed to that court, and not the courts of New York generally, will be allowed in that state to entertain an attack upon a judgment procured by perjurious testimony. We must therefore eschew denial of enforcement of that judgment here while it stands unimpaired where rendered.
*575 Defendant does not strengthen his position by cloaking his attack upon the New York judgment in the guise of a resort to the unclean hands doctrine. To say that a party's perjury in establishing the merits of a cause of action, resulting in a foreign judgment, is such unclean hands as in and of itself warrants refusing recognition thereof in an equity court at the forum  recognition otherwise required by the interpretive rules of full faith and credit discussed above  would be to undermine the full faith and credit mandate by indirection. Such a result is not called for by the facts and holding in Second National Bank of Philadelphia v. Thompson, supra, relied upon by defendant. The Pennsylvania judgment there impugned was void by Pennsylvania law and subject to declaration as such in an equity proceeding in that state.
Plaintiff seeks counsel fees on the appeal. We allow her the same amount granted by the trial court, $400.
Judgment affirmed.