### ROBERT JARDINE v. CHRISTIAN REICHERT.

1. A judgment rendered in another state, when sued on here, can be impeached only on the ground that the adjudging court did not have jurisdiction over the person of the defendant or the subject matter.
2. If the defendant was present in the foreign state when proceedings were begun, and process was served upon him, no irregularity, in such service, unless such as deprived it of all citatory effect, can be set up against the judgment ensuing thereon, in a suit on such judgment, in this state.

---

On rule to show cause why a new trial should not be granted.

Argued at November Term, 1876, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, DIXON and REED.

For the plaintiff, *Gilbert Collins.*

For the defendant, *Leon Abbett.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is a suit upon a judgment recovered by the plaintiff, against the defendant, in the Superior Court of the city of New York. The defence raised

at the trial was, that this New York court did not have jurisdiction over the defendant, so as to warrant the rendering of the judgment in question.

Annexed to the record which the plaintiff produced, and forming part of it, was an affidavit, setting forth that the affiant served, at a certain time therein mentioned, and at a certain specified place in the city of New York, "a copy of the annexed summons, together with the complaint therein mentioned, which is also hereunto annexed," on the defendant, "by delivering the same to such defendant personally, and leaving the same with him." In the body of the judgment, it is stated that, it appearing "that the summons, with a copy of the complaint, having been duly served" on the defendant, and no copy of an answer or demurrer to the complaint having been served on the plaintiff, on motion of the plaintiff's attorney, it was adjudged that the plaintiff recover a certain designated sum of money, against the defendant.

To meet this *prima facie* case, the defendant offered himself as a witness, and testified, in substance, to the following facts, touching the service of process upon him : that he was in a certain contractor's office, in the city of New York, when a man came in, and standing within two feet of him, held out to him a paper, saying, there was a paper from the Jardines ; that the witness said he did not want any paper from them, and the man then threw the paper on the floor before him ; that he, the defendant, did not pick up the paper, did not read it, and did not know its contents ; that the man serving it did not tell him what it was, nor read it to him. This statement was impugned by testimony adduced by the plaintiff, but in disposing of the present motion, it will not be necessary to refer to this, as I am entirely satisfied that, by the defendant's own showing, the judgment in the Superior Court of New York should have been held, as a matter of law, to be absolutely conclusive of his rights in the present controversy.

The attempt, on the side of the defence, was, to vacate an adjudication made by a court of general jurisdiction of another

Jardine v. Reichert.

state. By the constitution of the United States, *Art. IV.*, § 1, it is declared, " that full faith and credit shall be given, in each state, to the public acts, records and judicial proceedings of every other state. And congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof." By virtue of this power, the act of May 26th, 1790, was passed, which, after providing the mode of their authentication, declares that " the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them, in every court within the United States, as they have by law or usage in the courts of the state from whence the said records are or shall be taken." As is well known, this provision of the constitution, in connection with this supplemental statute, has been the subject of much consideration by the courts of this country, both state and national. Although the views expressed from the bench, in this series of cases, have not been entirely coincident, nevertheless certain results have been reached which now may be said to possess the stability of rules of law. Among these, plainly, may be placed the proposition that the judgments of other states are not like domestic judgments, conclusive on the point of jurisdiction. When a decision, pronounced *extra territorium*, is put in controversy, it is competent, as a defence, to show that the adjudging tribunal had no jurisdiction over the person or the subject matter. The principle is, that the constitution and the federal act make the judgments only of state courts having the right to take legal cognizance of the case, conclusive of the rights involved, when sued upon in another state. In such a suit, therefore, the question of jurisdiction is always open to inquiry. This has been decided in several instances by this court, and in many of the other courts in this country, a similar result has been reached, as will appear from the notes appended to the case of *Mills* v. *Duryee,* 2 *Am. L. C.* 778. Upon looking at these citations, it will be perceived that the conclusion just indicated, has been justified by this course of reasoning, viz., that it was the intention of the constitution of the United

States and of the act of congress, to give to the judicial pro-
ceedings of a state, when transferred to another state, that
effect which, upon general principles of law and natural jus-
tice, such proceedings would be entitled to, within the terri-
tory where they originated ; that the judgment, if the court
rendering it was not possessed of jurisdiction over the case,
was void at home, and, consequently, could be invested with
no force when sued upon abroad ; and that judicial cognizance
over the person could not be acquired without the citation of
the defendant, he being a non-resident, was such as to afford
to him a reasonable opportunity of making defence. Accord-
ingly, pleas to suits on extra-territorial judgments have been
repeatedly sustained, which alleged that the defendants were
non-residents of the state in which the judgments were rendered;
that they were not within such state at any time pending the
suit or when the judgment was rendered, and were not served
with process, and did not appear to the action. The consti-
tutional right to thus allege this defence, is ascertained and
assured in the act of this state, entitled "An act relative to
foreign judgments." (*Nix. Dig.* 750.) The underlying maxim
of this legislation and this train of adjudications is, that even
by express legislation a state cannot give such an efficacy to
its own judicial determinations, that they will have a final
effect over the rights adjudged in a foreign forum, as against
an absent citizen of another state who was not cited to appear,
and whose appearance was not voluntarily entered. And it is
also to be regarded as settled by the great weight of authority,
that the want of jurisdiction of the court rendering the judg-
ment can be shown by evidence, notwithstanding the recital,
in such judgment, of the existence of the controverted facts.
To this extent the law on this subject must, I think, be con-
sidered as entirely at rest in this state.

But it is obvious that the present case is not comprehended
in the class of cases which are thus to be taken as having been
finally adjudged. It is distinguished from that class by the
circumstances that the defendant in this suit was, at the time
of the inception of the action in New York, present in person

in · that state, and that he was, in some sort, served with process.  Confessedly, he was within the jurisdiction of the Superior Court of the city of New York, at the time the suit in question was commenced, and it is also admitted that a copy of the summons and complaint was offered to him.  This he refused to take, and it was, consequently, thrown at his feet.  Now it is plain that if this was not a good service of this process, it was on account of the omission of the person serving it to communicate to the defendant its character or contents.  But the infirmity of this objection is, that we are bound to assume, in the absence of all proof upon the subject, that such a service as was actually made—that is, a service unaccompanied with any explanation of the character or office of the paper which was served—was valid by the laws of New York.  This is a presumption *de jure*, because the record now before us shows that the Superior Court declared that such service was due and legal.  Standing on this ground, therefore, the only question presented by this case is, whether, if a state authorizes the process of its court to be served upon a defendant, by leaving a copy of the summons and complaint with him, a judgment ensuing on such procedure, will not be as valid and effectual, when sued on in another state, as it will be at home.

Upon examining the decisions, and the reasons which have led to them, I am entirely satisfied that a judgment founded on the kind of notice just mentioned, is elsewhere as conclusive, touching the matters it adjudges, as it is in the state in which it is rendered.  It is one of the unquestionable prerogatives of every independent government, to prescribe the method by which parties interested shall be apprised of the pendency of proceedings in its tribunals; and such method can be repudiated, and the adjudication founded thereon can be invalidated, by the courts of other states, only when it is so plainly inefficacious as a means of notification, that its normal operation must, in the main, result in decisions against persons out of the jurisdiction, and who have no knowledge of the danger with which they are threatened.  The rule

established by the authorities, to which reference has been made, is, that the judgment cannot be disregarded in the extra-territorial suit, unless the notice to bring the defendant into court has been, on account of its inefficacy, inconsistent with that general canon of jurisprudence which, in all cases, requires that a person must be offered a hearing before his rights can be affected by judicial action. But it is undeniably clear, that a copy of process offered to a party, and left within his reach, is not a notice of this character. It may be wiser legislation to prescribe that the server of the summons shall, at the time of leaving a copy of it, inform the defendant of the contents of such process; but it would be altogether extravagant to insist that such completeness of service is one of the inalienable rights of men. The laws of a state on this subject can be repudiated by the courts of a sister state, when they are so framed as to clearly violate any of those fundamental maxims on which society rests. It would seem quite fanciful to say that a law belongs to such condemned class, that declares that it shall be a sufficient citation to a person sued, to offer him a copy of the summons and complaint, and, upon his refusal to receive them, to cast them at his feet. Such a mode of service could scarcely, under any circumstances, be used as an instrument of fraud, and, in almost every instance, would effect its purpose of giving to the defendant the requisite information. In these cases, the question is never whether the citation ordained by the foreign law is of a character to commend itself to the judgment, but it is whether, for the purpose for which it is designed, it is, in substance, entirely nugatory. Irregularities in the service of process must be objected to before the court in which such process is returnable, and, unless they are so radical as practically to strip the summons of all citatory efficacy, they cannot be allowed, in any jurisdiction, to have the effect of annulling the judgment. Any other rule than this would deprive the most solemn decisions of the highest courts of other states of all their legal value, when endeavored to be enforced extra-territorially; virtually, they

would be converted into mere matters *in pais*, altogether dependent on the statements which the party served with process might make with respect to possible informalities occurring at the time of the service of such process.

In the case now before this court, the service of process on the defendant appears to have been a substantial compliance with the law of New York. That law required that a copy of the summons and complaint should be left with the party; it did not prescribe that the person leaving such copy should read it or make known its contents. Such a transcript was tendered to this defendant, and, on his refusal to accept it, the paper was thrown at his feet. Such an act was uncivil, but the paper was certainly left with the defendant, and that was all that the law called for. Such a service, however informal or rude in manner, cannot be declared to be an act utterly void, and the consequence is, the judgment resting upon it must be held to be, both in the domestic and in every foreign jurisdiction, valid and unimpeachable. Therefore, the defence set up at the trial should have been overruled.

Let a *venire de novo* issue.