47 N.J. Super. 521 (1957)
136 A.2d 416
VIRGINIA (BROSSEAU) ZELEK, PLAINTIFF-RESPONDENT,
v.
ORVILLE BROSSEAU, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 18, 1957.
Decided November 25, 1957.
*524 Before Judges GOLDMANN, FREUND and CONFORD.
*525 Mr. Frank M. Lario argued the cause for appellant.
Mr. A. David Epstein argued the cause for respondent (Messrs. Epstein & Fluharty, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a summary judgment entered in plaintiff's favor by the County Court in an action brought upon a Vermont judgment fixing arrearages in support money for their infant son provided for under a prior divorce decree.
The parties were married in 1940 in Vermont. There was one child born of the marriage. In 1942 plaintiff instituted divorce proceedings against her husband in the Chittenden County Court, Vermont. He entered an appearance by an attorney, but did not otherwise participate in the proceedings. Plaintiff prevailed. The divorce decree of July 7, 1942 awarded her custody of the boy and ordered defendant to pay her $6 a week for his support. Plaintiff's affidavit alleges that defendant was duly served with this order and that he undertook to make support payments pursuant to its terms and conditions. The order undoubtedly was served on defendant's Vermont attorney, defendant not being present within the State. Defendant does not presume to deny service; he states, merely, that he was never served personally with the order.
In 1955 plaintiff, who had since remarried, filed a petition with the Chittenden County Court under Vt. Rev. Stat., § 3241 (1947), as amended by Vt. Pub. Acts 1955, No. 110  the amendment had become effective only four months before  for a judgment fixing the amount of arrearages due under the support order since October 1, 1947. Defendant was then and is presently a resident of Westmont Township, Camden County, New Jersey. In accordance with Vermont Law, Vt. Rev. Stat., § 2136 (1947), an order issued out of the Chittenden County Court for out-of-state personal service upon defendant, calling upon him to appear and answer within 21 days from service. He *526 was personally served at his home with certified copies of the original writ declaration and summons, as well as the order of notice. He did not appear or answer. Accordingly, the Vermont court on December 14, 1955 awarded plaintiff judgment for support arrearages in the amount of $2,568, after expressly finding that defendant had been duly served with the 1942 support order and had made payments thereunder until 1947.
The present action was brought upon an exemplified copy of the Vermont judgment, and it was pleaded that the judgment had been obtained in accordance with the laws of Vermont. Defendant answered and raised various defenses, among them that the judgment was void because Vermont did not have jurisdiction over him or the subject matter, the judgment was not a final one, it had been obtained by fraud, and was void because contrary to the public policy of this State as reflected in the Uniform Reciprocal Enforcement of Support Act, N.J.S. 2A:4-30.1 et seq. (L. 1952, c. 197, as amended by L. 1953, c. 245). Interrogatories were served on plaintiff and answered, and her deposition taken. Plaintiff then moved for summary judgment, both sides submitting affidavits and briefs. The County Court granted the motion, concluding as a matter of law that the Vermont court had jurisdiction, there was no fraud in procuring the Vermont judgment, and enforcement of the judgment was not against our public policy.
On appeal defendant raises the same questions of jurisdiction, fraud and public policy, and contends that the Vermont judgment was not entitled to full faith and credit in the courts of our State. He further argues that plaintiff could not properly bring the present action in her own name because the support was owed to the child, and that her right to collect arrearages is vitiated because she has deliberately stolen the child's affections away from the father. None of these arguments have merit. Summary judgment was properly allowed.
Defendant's attack upon the jurisdiction of the Vermont court because of lack of personal service upon him in *527 that state, is patently misdirected. The Vermont court obtained in personam jurisdiction over him when he entered his appearance by attorney in the original 1942 divorce action. It could therefore not only dissolve the marriage bond but enter the custody and support order it did. Having once appeared, defendant submitted himself to the continuing jurisdiction of the Vermont court as to all matters stemming from the original decree, without the necessity of any subsequent independent acquisition of jurisdiction over his person. This concept of continuing jurisdiction is universally accepted. See Restatement, Conflict of Laws, §§ 76, 82, pp. 114, 125 (1934), and 1948 and 1954 Supplements; Goodrich, Conflict of Laws (3d ed. 1949), § 73, p. 196; Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1945), rehearing denied 328 U.S. 876, 66 S.Ct. 975, 90 L.Ed. 1645 (1945); Commonwealth ex rel. Milne v. Milne, 149 Pa. Super. 100, 26 A.2d 207 (Super. Ct. 1942), and Hatch v. Hatch, 15 N.J. Misc. 461, 192 A. 241 (Ch. 1937). The only constitutional prerequisite is that defendant be given such notice of any subsequent proceeding as will satisfy the reasonable notice demand of the due process clause. Griffin v. Griffin, above, 327 U.S., at page 228, 66 S.Ct. at page 560; Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 314; 70 S.Ct. 652; 94 L.Ed. 865 (1950); Cukor v. Cukor, 114 Vt. 456, 49 A.2d 206, 168 A.L.R. 227 (Sup. Ct. 1946); Kase v. Kase, 18 N.J. Super. 12, 17 (App. Div. 1952).
Vt. Rev. Stat., § 3241 (1947), as amended by Vt. Pub. Acts (1955), No. 110, provides:
"Action to recover alimony support money and suit money. When a decree or order for the payment of either temporary or permanent alimony, allowance for the support, care or maintenance of a minor child or children or suit money has been made by the county court or a superior judge, and the person liable for the payment of money under such decree or order has accepted service thereof, or has been legally served with notice of such decree or order, the party entitled by the terms of such decree or order to payment thereunder may bring a petition to the county court asking for a determination of the amount due under such order. Upon notice to the other party and hearing thereon, the county court shall render judgment *528 in favor of the petitioner for the amount due under such decree or order, or such part thereof as the court deems just and such judgment shall be as binding in all respects as though rendered in an action of contract. An additional petition may be brought at any time for further unpaid balances. The county court in which the cause was pending at the time the original order was made shall have jurisdiction of petitions under the provisions of this section, irrespective of the amount in controversy or the then residence of the parties. Such petitions may be brought and judgment obtained on decrees and orders heretofore rendered and still in force."
The Vermont Legislature recognized defendant's rights by establishing reasonable safeguards to afford him notice. Vt. Rev. Stat., § 2136 (1947) provides:
"When an action is commenced at law or in equity, an absent defendant, residing or being without the state so that process cannot be served on him, may be notified of the pendency of such action and given opportunity to make defense therein, by the delivery to him personally at any place within or without the state, of copies of the process and pleading, and of an order for such delivery, stating the time and place when and where he is required to appear, all under the hand of the clerk or a magistrate of the court wherein the action is pending. County clerks may issue such orders and certify such copies in or out of term time, and before and after the entry of such action in court."
Contrary to defendant's contention, the Vermont action was not an original, plenary one where an in personam judgment was entered for a cause of action over which that State had no jurisdiction. Were that the case it is undisputed that defendant would have had to be served personally in Vermont. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). The action here was a summary one, brought pursuant to the quoted statute, to determine and reduce to a sum certain the arrearages due from defendant to plaintiff under the support order theretofore entered. Jurisdiction to make such a determination derived from the jurisdiction obtained over defendant and the service of the support order in the first instance.
The notice given to defendant of the arrearage action, by personally serving him at his home in New Jersey, was entirely adequate. It met the test set out by *529 Chief Justice Beasley in Jardine v. Reichert, 39 N.J.L. 165, 169-170 (Sup. Ct. 1877):
"It is one of the unquestionable prerogatives of every independent government to prescribe the method by which parties interested shall be apprised of the pendency of proceedings in its tribunals; and such method can be repudiated, and the adjudication founded thereon can be invalidated, by the courts of other states, only when it is so plainly inefficacious as a means of notification that its normal operation must, in the main, result in decisions against persons out of the jurisdiction, and who have no knowledge of the danger with which they are threatened. The rule established by the authorities * * * is, that the judgment cannot be disregarded in the extra-territorial suit, unless the notice to bring the defendant into court has been, on account of its inefficacy, inconsistent with that general canon of jurisprudence which, in all cases, requires that a person must be offered a hearing before his right can be affected by judicial action."
The Vermont court therefore had jurisdiction to enter the 1955 judgment for arrearages by virtue of its continuing jurisdiction, and defendant had the requisite notice under the due process clause.
Defendant further argues that the 1955 amendment to the Vermont act could not have retroactive application, so as to authorize the court to acquire jurisdiction over him, a non-resident, for the entry of a personal judgment for an alleged cause of action that accrued prior to its enactment. He points to the fact that the original Vermont statute, section 3241, embraced only orders for temporary alimony. The 1955 amendment to section 3241 expressly included orders for the support of minor children. Vt. Pub. Acts 1955, No. 110.
The legislative intent as manifested by the Vermont statute clearly indicates that the law was to be retroactive, for the statute provides that "petitions may be brought and judgment obtained on decrees and orders heretofore rendered and still in force." The provision was procedural, and its retroactivity not violative of due process. Laws retroactively adding to the means of enforcing existing obligations are valid. 2 Sutherland, Statutes and Statutory Construction *530 (3d. ed. 1943), § 2210, p. 129 et seq. True, proceedings to fix the arrearages were not begun until August 1955, some four months after the effective date of the amendatory act. But the court's power to enter the 1955 judgment did not depend on any power to enter such an order as of the date of the original divorce decree. Although the jurisdiction originally acquired in that divorce action was the theoretical basis for the court's power to enter the judgment for arrearages under its continuing jurisdiction, the statute authorizing the exercise of that continuing jurisdiction need not have been in existence at the time of the original decree. As long as the act, on its face, purported to be applicable to support orders originally entered before its effective date, it authorized the exercise of the power inherent in the court by virtue of the 1942 divorce decree.
Defendant contends, however, that the judgment is invalid and not entitled to full faith and credit because obtained by fraud, and for the further reason that it is contrary to our public policy.
The fraud argument is based on the charge that plaintiff withheld from the Vermont court the fact that defendant had been paying on account of the original support order. The payments allegedly made were allotments from the Veterans Administration which he had directed it to pay to the mother for the support of the child out of his service-connected disability benefits. These allotments, in varying monthly amounts, totalled $1,061.88. In her answer to defendant's interrogatories, plaintiff alleges that the Vermont court had refused to credit defendant with the allotments so received. The findings of fact and judgment of the Vermont court do not, however, disclose consideration of the matter. Assuming plaintiff received these payments and that, contrary to her affidavit, this information was not brought to the attention of the Vermont court, was this such fraud as would disentitle the Vermont judgment to full faith and credit?
There are older United States Supreme Court cases indicating that, because of the full faith and credit clause, *531 judgments of sister states, unlike judgments of foreign countries, cannot be impeached on the ground that they were obtained by fraud, Hanley v. Donoghue, 116 U.S. 1, 4, 6 S.Ct. 242, 29 L.Ed. 535 (1885); State of Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 292, 8 S.Ct. 1370, 32 L.Ed. 239 (1887), as long as the rendering court had jurisdiction. However, later commentators argued that judgments of sister states should be impeachable for fraud in the forum to the same extent that they would be subject to attack in the rendering state. See, e.g., Goodrich, Conflict of Laws (3d ed. 1949) § 210, p. 614. There are expressions to that effect in some Supreme Court cases. See Cole v. Cunningham, 133 U.S. 107, 113, 10 S.Ct. 269, 33 L.Ed. 538 (1889). New Jersey courts have expressly so held. See, e.g., Second National Bank of Philadelphia v. Thompson, 141 N.J. Eq. 188 (Ch. 1947).
Apart from constitutional considerations, as a general rule the fraud which is said to furnish the basis for equitable relief from a judgment, whether domestic or foreign, is limited to extrinsic fraud, as opposed to intrinsic fraud. See, generally, 31 Am. Jur., Judgments, §§ 653-655, pp. 228 et seq. (1940); 50 C.J.S. Judgments § 874(b), p. 450 (1947), for a delineation of the distinction. Extrinsic fraud exists where a party has been prevented from having a reasonably fair trial. Equitable relief will be afforded only in a limited number of situations where the judgment was rendered after proceedings in which the party claiming to be aggrieved was deprived of an opportunity to present adequately his claim or defense. Restatement, Judgments, § 118(b), pp. 571-572 (1942). For example, subject to general equitable considerations, relief from a judgment will be granted such a party if, because of procedural rules, he was unable to set up a defense, even though he failed to avail himself of an opportunity to obtain equitable relief before the judgment was entered; or where, without fault, he did not know of the action or did not appear at the trial; where the judgment was based upon a fraudulent claim which he did not contest because he was fraudulently *532 misled by the other party to the action to believe that he had no defense, or was prevented by duress from contesting it; where he was prevented from having a fair trial because of the bribery of or duress upon his attorney or other person in charge of the defense, by the other party; where he was subject to an incapacity and was so poorly represented that there was no substantial presentation of his case, and the judgment was obtained in an action between him and his fiduciary or by a person who knew that his claim was groundless; where there was corruption of or duress practiced upon the court or jury by the other party or a third person; or where circumstances arise after the judgment is rendered which make it inequitable to enforce the judgment against him. These situations are fully discussed in Restatement, Judgments, §§ 119-125, pp. 579 et seq. None of them is present in this case.
The mere allegation that plaintiff obtained the Vermont judgment by perjured testimony is not sufficient to afford equitable relief from the judgment in our courts. Woodward, "Collateral Attack upon Judgments on the Ground of Fraud," 65 U. of Pa. L. Rev. 103, 110, 116 (1916); 1 Freeman, Judgments (5th ed. 1925), § 308, p. 613; Restatement, Judgments, § 126(2) (b), p. 611 (1942); accord, 31 Am. Jur., Judgments, § 541, p. 151; 50 C.J.S. Judgments § 874(b), p. 450. But see, Goodrich, Conflict of Laws (3d ed. 1949), § 210, p. 614. There was nothing here which prevented defendant from obtaining a fair hearing of his case in the Vermont court. Although he had reasonable notice of his wife's action for support arrearages, he elected not to appear and present such proofs as were in his possession.
Defendant cites no case which would indicate that Vermont would grant relief from its judgment, and we must therefore assume that the law of that state is the same as the law generally. Since it appears that the rendering state would not grant defendant relief from this judgment for the fraud here alleged, the full faith and credit clause precludes us from doing so. Defendant has therefore *533 failed to make out a case of fraud which would warrant the granting of relief from the judgment.
Defendant's argument that the Vermont judgment should not be accorded full faith and credit because it is against the public policy of New Jersey is likewise unsound. There may be exceptional cases where the full faith and credit clause does not require that recognition be given a judgment of a sister state which is in violation of the laws and policy of the forum but, it has been said, there are no exceptions in the case of a money judgment rendered in a civil action by the courts of another state. Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149, 150 A.L.R. 413 (1943), rehearing denied 321 U.S. 801, 64 S.Ct. 483, 88 L.Ed. 1088 (1944). And see Whitehead v. Villapiano, 16 N.J. Super. 415 (App. Div. 1951); Goodrich, op. cit., § 211, p. 618.
Defendant makes his argument on public policy grounds specific by stating that recognition of the Vermont judgment would run contrary to the policy and provisions of the Uniform Reciprocal Enforcement of Support Act, N.J.S. 2A:4-30.1 et seq. That act provides an efficient method  entirely different and perhaps more desirable than the one pursued by plaintiff  to enforce support orders entered in another jurisdiction. See Pfueller v. Pfueller, 37 N.J. Super. 106 (App. Div. 1955). But the uniform law specifically provides that the remedies therein granted are not exclusive, but "in addition to and not in substitution for any other remedies." Accordingly, the procedure followed by plaintiff is not against our public policy.
The remaining arguments made by defendant need not long delay us. He claims that plaintiff has no right to arrearages because she deliberately stole the child's affections. We find this contention completely irrelevant.
The point that the present action could not properly be brought in plaintiff's name is one that was not raised below and is clearly frivolous. The support order directed that the weekly payments of $6 be paid to plaintiff. She is the real party in interest under R.R. 4:30-1, for it is *534 she, and not the child, who is entitled to collect the arrearages.
The argument that the Vermont judgment for arrearages is not a final judgment is without basis in law. Paramore v. Paramore, 32 N.J. Super. 491 (App. Div. 1954), citing Whitehead v. Villapiano, above, 16 N.J. Super. 415 (App. Div. 1951). The Legislature of Vermont has specifically set forth in section 3241, as amended, quoted above, that a judgment determining the amount of delinquency under an order for support "shall be as binding in all respects as though rendered in an action of contract." The law of Vermont was pleaded by plaintiff in her complaint in the County Court, and we are bound to recognize it. We must give full weight to the Vermont judgment and recognize it as final.
Affirmed.