**Donald BJORGO, Appellant,**

**v.**

**Marie BJORGO, Appellee.**

**No. 7462.**

Court of Civil Appeals of Texas.

Amarillo.

May 3, 1965.

Rehearing Denied May 31, 1965.

Wayne B. Barfield, Amarillo, for appellant.

Dee Miller, Dist. Atty., B. G. Compton and John B. Reese, Asst. Dist. Attys., Amarillo, for appellee.

CHAPMAN, Justice.

This is an appeal from a summary judgment granted Marie Bjorgo against Don Bjorgo brought under the Texas Enforcement of Support act, Article 2328b–1 et seq., Vernon's Ann.Civ.Tex.St.

On May 26, 1954, in the State of Kentucky, a judgment was awarded for Marie Bjorgo against Don Bjorgo finding him to be the father of an illegitimate child born to her and requiring him to contribute $10.-00 each week to the support of said child for sixteen years.

All parties by brief appear to agree that the State of Kentucky has a statute known as the Bastardy Act, which requires a fa-

ther to support an illegitimate child. The judgment mentioned in the preceding paragraph was rendered under such statute and appellee brought suit in the trial court of this state to have the Kentucky bastardy judgment enforced under our Enforcement of Support act, Article 2328b–1 et seq., V.A.T.S. Both sides filed motions for summary judgment. The trial court overruled Don Bjorgo's motion for summary judgment, refused him a trial on the merits, and granted the motion of Marie Bjorgo, awarding her a judgment requiring Don Bjorgo to contribute $10.00 per week to the support of the illegitimate child until she reaches the age of eighteen years.

Though this appears to be a first impression case in Texas under a Bastardy Act of another state brought under the Enforcement of Support act of Texas, we do not believe it to be a first impression case under the rules of law applicable.

At common law the father was under no legal obligation for the support and maintenance of his illegitimate children. In Lane v. Phillips, 69 Tex. 240, 6 S.W. 610, our Supreme Court has said:

> " * * * while they are his children in fact, the rules of the common law refuse to recognize them as his children, to impose upon him the duties and obligations which the lawful father cannot avoid, or to confer upon them the right to support and paternal care which the child begotten in wedlock has."

■ The common law has not been altered in this respect by Article 602 of the Penal Code of Texas, V.A.T.S., which punishes for the neglect or refusal to provide for the support and maintenance of a child, since that provision applies only to legitimate children. Beaver v. State, 96 Tex.Cr.R. 179, 256 S.W. 929.

■ The adoption of the Texas Probate Code [1] did not change the common law because Section 3(b) of that Act provides: "Child" * * * "unless expressly so stated herein, does not include an unrecognized, illegitimate child of the father." We find no place where the act expressly so states otherwise and appellant herein has denied by pleadings that he is the father of the child for whom support is sought.

In a similar situation, so far as support to an indigent parent is concerned, our Supreme Court has written upon the obligation of a son living in Texas to support his mother under a California statute so requiring,[2] the court saying: "We concur in the holding of the Court of Civil Appeals that no recovery can be had for support furnished after respondent removed to and became domiciled in this state." The court further held as follows:

> "We are aware of no rule of law that would make the obligation a continuing one after removal from California even though it attached to him while a resident of that state. Citizens of a state equally share the burdens and privileges of citizenship regardless of when or how that status is attained. *To say that the support statute compelled liability for that period of time after the respondent moved to Texas would seem to deny to him equality with other citizens of the state.*" (All italics herein are ours.)

■ Though the Court did not cite the 14th Amendment to the Constitution of the United States for the statement just quoted, we would assume the "equality with other citizens" clause in the opinion had reference to that amendment wherein it says: "No State shall make or enforce any law which shall * * * deny to any person within its jurisdiction the equal protection of the laws." If appellant, a citizen of Texas, should be required to support a child

---

1. Acts 1955, 54th Legislature, p. 88, Chapter 55.

2. State of California v. Copus, 158 Tex. 196, 309 S.W.2d 227.

under a Bastardy Act of another state, he would not have equal protection with the other citizens of Texas who fathered an illegitimate child in Texas because there is no legal obligation for support under such circumstances in our state and our legislative enactments have apparently carefully avoided changing the common law rule stated by our Supreme Court in Lane v. Phillips, supra.

It is true that in the Copus case we had a divided court but so far as the rule of stare decisis obligates that court, they are bound by the majority opinion regardless of change in personnel on the court. It is also true that petitioner in that case did not bring its suit under the provisions of our Enforcement of Support act. However, the dissenting opinion stated: " * * * all that is required to have been done or which could have been done by the certifying court in California under the Support Act has been directly accomplished and proved in the Texas district court. * * * So here, in my opinion, we have the substance of the Uniform Support Act * * *." The dissenting opinion also confirmed that the majority held that to require Copus to contribute to the support of his mother would be to deny him the equal protection of the laws. The dissent also stated: "Both Texas and California have statutes authorizing the court to require support of parents.[3] Moreover, if the Uniform Support Act had been invoked and followed here, and a recovery allowed under it, that Constitutional point would be the same." Thus, most of the dissent reasons given in Copus would not be applicable to the instant case.

The dissenting opinion in Copus also stated: "Texas should not become a haven for deserting providers who would ignore or repudiate their duty to support." We agree. To alleviate that problem, so far as the requirement of a citizen of this state to support an illegitimate child in another state is concerned, all that would be necessary to change such haven would be for

the legislature of Texas to pass a law requiring such support.

Section 7 of our Texas Enforcement of Support act, heretofore cited, provides in part that duties of support enforceable under such act are those imposed or imposable under the laws of any state where the alleged obligor was present during the period for which support is sought or where the obligee was present when the failure to support commenced, at the election of the obligee.

The obligee here selected the initiating state but did not seek to enforce those payments which had become absolute, final and vested. Section 13 of the act provides: "If the court of the responding state finds a duty of support, it may order the defendant to furnish support or reimbursement therefor and subject the property of the defendant to such order." Had appellee proceeded under the last clause of Section 13 requiring reimbursement for accumulated payments, the question would be more serious if proof had been made that the Bastardy Act of Kentucky does not operate retrospectively, as we shall later see.

■ We believe it cannot be denied that Section 7 and the first clause of Section 13 of our Enforcement of Support act are repugnant to the protection of the equal rights clause of the 14th Amendment to the Constitution of the United States from the manner in which it is sought to be imposed in the instant case. We thus are presented with the question of whether a state law may be given precedence over the Constitution of the United States. We believe that question was settled in 1803 in Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60. That court speaking through Chief Justice Marshall said:

"It is a proposition too plain to be contested, that the constitution controls any legislative act repugnant to it; or, that the legislature may alter the constitution by an ordinary act.

3. Texas does not have a statute requiring support by a father of an illegitimate child.

"Between these alternatives there is no middle ground. The constitution is either a superior paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it.

\* \* \* \* \* \*

"So if a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.

"If, then, the courts are to regard the constitution, and the constitution is superior to any ordinary act of the legislature, the constitution, and not such ordinary act, must govern the case to which they both apply.

"Thus, the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void; and that courts, as well as other departments, are bound by that instrument."

It is true we are faced with the full faith and credit clause of Article 4 of the Constitution of the United States. Our Supreme Court in Guercia v. Guercia, 150 Tex. 418, 241 S.W.2d 297, refrained from passing on whether that clause applies in cases under the Reciprocal Support Act.

It appears to be settled law that in enforcing foreign judgments the full faith and credit clause applies only where the right sought to be imposed has become absolute and vested. Criteser v. Gaffey, Com.App., 222 S.W. 193. It becomes absolute, final and vested only where the foreign judgment has become final and not subject to change. Quinn v. Quinn, Tex.Civ.App., 216 S.W.2d 1001 (N.R.E.). It is the burden of the plaintiff to establish by pleadings and proof that under the law of the foreign state such judgment so entered therein is final. Quinn v. Quinn, supra. This record shows no such pleading or proof and neither the pleading, proof nor judgment seek to recover for the amount of payments already accumulated but only those to be paid weekly after the judgment was rendered in Texas. Those not being final and vested, the full faith and credit clause of the United States Constitution is not applicable.

The leading case appears to be Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905, 28 L.R.A.,N.S., 1068, 20 Ann.Cas. 1061. The opinion in Criteser v. Gaffey, supra, set out the general rule and exception in that case as follows:

"'First, that, generally speaking, where a decree is rendered for alimony and is made payable in future installments, the right to such installments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the installments, since, as declared in the Barber Case [21 How. 582, 16 L.Ed. 226], "alimony decreed to a wife in a divorce of separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is."

"'Second, that this general rule, however, does not obtain where by the law of the state in which a judgment for future alimony is rendered the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the installments ordered by the decree to be

paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the installments becoming due.' "

Our Supreme Court has also spoken on the subject of decrees being absolute and vested. In Gard v. Gard, 150 Tex. 347, 241 S.W.2d 618, the court quoted with approval from the Sistare case to the effect that where future installments for alimony is rendered in a decree, the right to such installments becomes absolute and vested *upon becoming due* and is therefore protected by the full faith and credit clause, *provided no modification of the decree has been made*. Thus, if the court rendering the judgment had the right to act retrospectively, the decree was not absolute and vested and the full faith and credit clause did not apply. The Supreme Court then said: "We have accepted the holding in the Sistare case."

The fact that alimony of a former wife is exempt in the Enforcement of Support act would have no bearing on our case because fathers of illegitimate children are also exempt by our common law and case law. Lane v. Phillips, supra.

■ In the case at bar, had there been proper pleading and proof of the payments that had accumulated to the date of judgment, and proof that the law of Kentucky as to bastardy payments does not operate retrospectively, the question here would have been more serious because: "When the installments matured, her right thereto became 'absolute, vested, and protected by the full faith and credit clause of the Federal Constitution.' " · Gard v. Gard, supra.

■ In the absence of proof that the law of a foreign state is contrary to the law of the forum the latter must be followed. Clark v. Clark, Okl., 380 P.2d 241. Periodical payments for child support in the future as provided for in the judgment here under consideration are not final and vested in this state and may be changed and suspended as the facts, circumstances and justice may require. Article 4639a, V.T.C.S.

As heretofore stated, appellee did not offer any proof as to the rule in Kentucky in this respect but Article 435.240 of the Kentucky Revised Statutes provides: "Pending an application for divorce or on final judgment the court may make orders for the care, custody and maintenance of the minor children of the parties * * * *and at anytime afterward upon the petition of either parent, revise and alter the same* * * * *"*

In the absence of proof to the contrary we would assume illegitimate children are considered "children" of the father within the purview of such article, since he is required in that state to support them.

■ Therefore, since the payments under the judgment rendered herein had not at the time of the rendition of the judgment become absolute, final and vested, we hold the full faith and credit clause of Article 4 of the Constitution of the United States did not apply. Since it does not apply, appellant is protected under the "equal protection of the laws" clause of the 14th Amendment to the Constitution of the United States.

In Berkley v. Berkley, Mo., 246 S.W.2d 804, 34 A.L.R.2d 1456, a wife domiciled in California sued her husband, domiciled in Missouri, to recover a sum expended for her support of their legitimate child in the care and custody of the mother. The parties prior to separation had resided in and were citizens of California. The Supreme Court held: "Defendant is a resident of Missouri and subject to its legislative jurisdiction. Therefore, the law of Missouri governs his liability."

The Supreme Court of Missouri relied on Yarborough v. Yarborough, 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269, which held: "The character and extent of the father's obligation, and the status of the minor, are determined ordinarily, not by the place of the minor's residence, but by the law of the father's domicile."

There is still another jurisdiction which held in conformity with the majority opinion in Copus where the question involved a Uniform Dependents Act.[4] Pennsylvania brought a suit in Ohio under the Uniform Dependents Act against an Ohio son. The latter state had a statute which denied support from a child to a parent who had abandoned such child before it became 16 years of age. The parent had so abandoned the child and recovery was denied in Ohio by the majority opinion on the ground of equal protection, the same ground upon which recovery was denied by our Supreme Court in Copus.

Therefore, since the full faith and credit clause does not apply to the proceedings as instituted here, appellant is protected under the 14th Amendment to the Constitution of the United States which provides: "No State shall * * * enforce any law which shall * * * deny to any person within its jurisdiction the equal protection of the laws."

Accordingly, the judgment of the trial court is reversed and remanded.

DENTON, Chief Justice (dissenting).

I respectfully dissent.

As I understand it, the majority has based its decision on the theory that to require appellant to support his illegitimate child, in the absence of a Texas law imposing such a duty, would deny him the equal protection of the law. In so holding the majority relies on State of California v. Copus, 158 Tex. 196, 309 S.W.2d 227. In my opinion the Copus case is not controlling. It was not an action brought under the Uniform Reciprocal Enforcement of Support Act as is the instant case. It seems to me another distinction is that in the Copus case the claim sought to be asserted was based on a sister state statute while in the present case the child support claim is based on a valid judgment of a sister state.

A portion of the Uniform Reciprocal Support Act, Section 7 of Article 2328b–3, V.A.C.S., reads as follows:

"Duties of support enforceable under this law are those *imposed or imposable under the laws of any state* where the alleged obligor was present during the period for which support is sought or *where the obligee was present when the failure to support commenced, at the election of the obligee,* but shall not include alimony for a former wife." (Emphasis added)

In my opinion this section allows the obligee (Marie Bjorgo) to choose the substantive law that is to determine the duty to pay child support. She chose the Kentucky law which was duly invoked. The Kentucky court then declared appellant the father of the minor child and ordered him to pay support. Texas courts should look to the law of Kentucky and recognize the duty of appellant of support "imposed or imposable" under the Kentucky law. Under this record Mrs. Bjorgo made this election by instituting this proceeding. It is uncontradicted she was present in the initiating state (Kentucky) when appellant's "failure to support commenced".

The enforceability of a child support judgment of a sister state by Texas courts against a father who has thereafter become a resident of Texas can not be questioned. Guercia v. Guercia, 150 Tex. 418, 241 S.W. 2d 297. That case held that the enforcement of such judgments of sister states is based on comity and public policy. The only distinction between the Guercia case and the instant case is the legitimacy of the child for whom support is being sought. Kentucky law does not make such a distinction. Under the Uniform Reciprocal Support Act I do not think courts of this state should make such a distinction.

We are called on here to enforce a duty imposed by a Kentucky court under a

4. Commonwealth of Pennsylvania ex rel. Department of Public Assistance, etc.

v. Mong, 160 Ohio St. 455, 117 N.E.2d 32.

Kentucky law. At the time the duty to support arose appellant was a resident of Kentucky. The fact he voluntarily left that state and became a resident of Texas, which does not require a father to support an illegitimate child, should not relieve appellant of that duty. If the Reciprocal Support Act is to be effective, the judgments of the initiating states must be recognized and enforced.

Although the Supreme Court in Guercia v. Guercia, supra, specifically refrained from passing on the question as to whether or not the full faith and credit clause of the United States Constitution applies in cases under the Reciprocal Support Act, I am convinced such constitutional requirement is applicable. I would affirm the judgment of the trial court.

## ON MOTION FOR REHEARING

CHAPMAN, Justice.

Because this case involves the support of a minor child this writer has given further study to the case since Appellant's Motion for Rehearing. The majority is still firmly convinced that we properly disposed of the case.

The Dallas Court of Civil Appeals, Freeland v. Freeland, 313 S.W.2d 943 (N.W.H.), in construing Article 2328b–1 et seq., V.A. T.S., with respect to a case originating in Indiana as the initiating state has held:

"Since appellant so far as the records show has continued to reside in the State of Texas we believe that the laws of Texas as Responding State are to be applied in this case. State of California v. Copus, Cal., 309 S.W.2d 227; Rosenberg v. Rosenberg, 152 Me. 161, 125 A.2d 863; Daly v. Daly, 21 N.J. 599, 123 A.2d 3."

In an extradition hearing in Florida, Clarke v. Blackburn, Fla.App., 151 So.2d 325, where North Carolina was seeking to extradite appellant to answer for non-support of an illegitimate child fathered in the latter state, the District Court of Appeal of Florida, Second District, after stating the ultimate question was "whether Clarke should be surrendered, under the Uniform Reciprocal Enforcement of Support Law, to the State of North Carolina for trial on the charge of committing the crime of nonsupport of an illegitimate child," held:

"Chapter 742 establishes a procedure whereby any unmarried woman who is pregnant or delivered of a bastard child may bring proceedings in the circuit court in chancery to determine the paternity of such child; and if the court (of the responding state) shall find the defendant to be the father of the child, then the court shall order the defendant to pay monthly payments for the care and support of the child. Only after such judicial determination is there a duty imposed by the laws of Florida upon the father to support such a child. The record here does not disclose any such judicial determination. Under the laws of the State of Florida, Clarke did not owe a duty of support. * * * There being no duty of support imposed by law upon Clarke, the provisions of Chapter 88, the Uniform Reciprocal Enforcement of Support Law, are not applicable and Clarke could not be extradited under the provisions thereof." (Parenthetical statement ours).

Where the initiating state was Michigan and the responding state Maine the Supreme Court of Maine in Lambrou v. Berna, 154 Me. 352, 148 A.2d 697 held:

"The rights of the parties are determined by the law of this state, our court having jurisdiction of the respondent."

That same court in Rosenberg v. Rosenberg, 152 Me. 161, 125 A.2d 863, in a case involving their Uniform Reciprocal Enforcement of Support Act held:

"The laws which govern in a situation such as this, are those of the responding state (Maine) and not the

laws of the initiating state (New York)."

In Jackson v. Hall, Fla., 97 So.2d 1, the Supreme Court of Florida held:

"And the duty of support enforced under the Act is not necessarily that imposed by the law of the initiating state; it is that 'imposed or imposable under the laws of any state where the obligor was present during the period for which support is sought' which is presumed to be the responding state 'until otherwise shown'. * * * It then becomes the duty of the court of the responding state to examine the petition and if it 'finds a duty of support, it may order the defendant to furnish support or reimbursement therefor and subject the property of the defendant to such order.' "

In passing upon the Uniform Reciprocal Enforcement of Support Act in the State of Nevada as respects the obligation of a husband to support a wife, the Supreme Court of that state, where the initiating state was California held in State ex rel. Lyon v. Lyon, 75 Nev. 495, 346 P.2d 709, as follows:

"In the case of Pfueller v. Pfueller, 37 N.J.Super. 106, 117 A.2d 30, 32, it was pointed out that the initiating state cannot fix the liability of the obligor in the responding state. In this regard the New Jersey court said:

'In effect it (the finding of the court in the initiating state) amounts merely to a finding that the allegation of the complaint warrants further proceedings; it is in no way evidentiary as to defendant's liability.'

* * * * * *

" '* * * it is the obligation, not of the initiating court, but of the court in the responding state, to determine whether or not the defendant spouse is under a duty to support the plaintiff spouse; and such determination may

be made by the latter court only upon the basis of evidence adduced before that court * * *.' Pfueller v. Pfueller, supra."

In Cobbe v. Cobbe, 163 A.2d 333, the Court of Appeals, District of Columbia, under that jurisdiction's Uniform Reciprocal Enforcement of Support Act, in a well-reasoned opinion involving a child seeking support from a father in Florida held:

"The duty of our courts, when the District of Columbia is the initiating jurisdiction, is to ascertain if 'the defendant owes a duty of support' in the sense of there being an obligor-obligee relationship like that of husband-wife or parent-child. Thereafter, the applicable law to determine defendant's liability for the breach of that duty is governed by the law of the responding state."

That court after quoting the Supreme Court of Florida in Jackson v. Hall, supra, then said:

"Florida has said the law of the responding jurisdiction will be used to determine the duty of support, and it is to be applied by the courts of that state as they interpret it. We think this view commends itself both in logic and practicability."

A careful study of all these cases convinces the majority that the Uniform Reciprocal Support laws were passed to provide the petitioner with a more convenient remedy, the purpose being to help indigent people who were unable to employ attorneys and travel about the country pursuing their remedies. Such is indicated in Zelek v. Brosseau, 47 N.J.Super. 521, 136 A.2d 416, syl. 13, p. 423. That case cited Pfueller v. Pfueller, 37 N.J.Super. 106, 117 A.2d 30, which holds with respect to the Uniform Enforcement of Support Act that:

"Under the statute it becomes the obligation, not of the initiating court, but the court in the responding state, to

determine whether or not the defendant is under a duty to support the plaintiff."

Since the State of Texas does not require the support of an illegitimate child and since all jurisdictions we have studied, including our own, have held the law of the responding state determines the duty of support, the majority believes we reached the correct conclusion in our original opinion and that this case must be reversed and remanded. Accordingly, the motion for rehearing is overruled.