**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0631-24

B.Y.F.,[1]

    Plaintiff-Respondent,

v.

K.D.,

    Defendant-Appellant.

_____

        Submitted January 12, 2026 – Decided February 24, 2026

        Before Judges Walcott-Henderson and Bergman.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FD-14-0224-24.

        K.D., self-represented appellant.

        Weiner Law Group, LLC, attorneys for respondent (William G. Johnson, Special County Counsel, on the brief).

PER CURIAM

---

[1] We use initials and pseudonyms for the parties and child to protect the minor's privacy. See R. 1:38-3(d).

Defendant K.D. appeals from the Family Part's September 17, 2024 order denying his motion contesting the establishment of paternity and related child support obligations concerning the parties' child, K.D. ("Kelly"). Having reviewed the arguments in light of the record and applicable legal principles, we affirm for the reasons expressed by Judge James M. DeMarzo in his thorough oral decision.

## I.

We limit our factual recitation to those relevant in this appeal. On July 12, 2017, the court established a child support order in the amount of $114 per week payable by defendant to plaintiff for the benefit of their child, Kelly, presumably based on defendant's signature on the certificate of parentage in 2008. Thereafter, in August 2018, the court entered an order suspending child support based on defendant's application for paternity testing and plaintiff's nonappearance and failure to provide a genetic sample for herself and the child.

The record exhibits defendant had previously submitted a DNA sample at the Essex County Courthouse on June 11, 2018, but plaintiff and the child did not submit their samples at the time. Eventually, after relocating to Pennsylvania, plaintiff provided genetic samples on February 1, 2019 at a

A-0631-24

LabCorp facility in Bethlehem, Pennsylvania. The test results indicated a "99.99[percent]" probability of paternity for defendant.

In 2023, after plaintiff moved to Morris County and applied for Temporary Assistance for Needy Families, the Morris County Office of Temporary Assistance ("MCOTA") made application to reinstate child support. On August 8, 2023, a Family Part judge in Essex County ordered plaintiff and the child to comply with genetic test but the prior 2019 test results were eventually located and presented to the court.

At a hearing on October 13, 2023, where plaintiff, defendant, and MCOTA appeared, the court referenced the LabCorp test from February 2019 and asked defendant if he was Kelly's father. Defendant replied "Yes." On that same date the judge entered an order for paternity "by consent and DNA testing dated 2/1/2019," and established child support payable by defendant in the amount of $149 per week.

Subsequently, venue was transferred to Morris County where defendant moved for a new round of DNA testing, challenging the validity and chain of custody of the 2019 results and arguing procedural irregularities and possible fraud. The motion judge denied the application. The judge found the evidence of paternity was overwhelming, noting consistent paperwork, thumbprints, and

A-0631-24

account numbers in the LabCorp documentation; defendant's sample in Essex County; plaintiff's sample in Pennsylvania; and a certificate of parentage signed by both parties from 2008 when the child was born.

On appeal, defendant contends the trial judge failed to address fundamental procedural defects and testing irregularities and violated his due process rights constituting reversible error. Specifically, defendant contends the judge: (1) accepted compromised unauthenticated testing evidence constituting an abuse of discretion; (2) relied on an allegedly fraudulent certificate of parentage despite evidence of misrepresentation; (3) erred by failing to find the procedures surrounding the paternity testing constituted extrinsic fraud; and (4) demonstrated prejudicial bias, undermining his right to a fair hearing.

Plaintiff opposed, arguing defendant provided no evidence of mistake, fraud, or newly discovered facts sufficient to vacate the paternity and child support orders under Rule 4:50-1. Plaintiff contends all procedures, including chain of custody, were followed, and that defendant's admission under oath, his prior conduct, and the genetic testing results support affirmance.

II.

"Our review of a Family Part judge's findings is limited[,] . . . 'afford[ing] substantial deference to the Family Part's findings of fact because of that court's

4

special expertise in family matters.'" Voynick v. Voynick, 481 N.J. Super. 207, 220-21 (App. Div. 2025) (quoting W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021)). Pursuant to this standard, "we are bound to uphold a finding that is supported by sufficient credible evidence in the record." Moynihan v. Lynch, 250 N.J. 60, 90 (2022) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "We will reverse only if we find the [court] clearly abused [its] discretion." Voynick, 481 N.J. Super. at 221 (alterations in original) (quoting Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012)).

"We apply that deference to a Family Part judge's decision regarding a child support obligation." Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012). However, the "[court's] legal conclusions, and the application of those conclusions to the facts, are subject to [a reviewing court's] plenary review." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Reese, 430 N.J. Super. at 568). We review questions of law and statutory interpretation decisions de novo. Cardali v. Cardali, 255 N.J. 85, 107 (2023).

"The decision [as to] whether to vacate a judgment . . . is a determination left to the sound discretion of the trial court, guided by principles of equity." F.B. v. A.L.G., 176 N.J. 201, 207 (2003). "The trial court's determination under

5

[Rule 4:50-1] warrants substantial deference and should not be reversed unless it results in a clear abuse of discretion." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012).

When a court has entered a [final order], the party seeking to vacate the [the order] must meet the standard of Rule 4:50-1, which in pertinent part states:

> On motion, with briefs and upon such terms as are just, the court may relieve a party or the party's legal representative from a[n] . . . order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; . . . (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . or (f) any other reason justifying relief from the operation of the judgment or order.

A party seeking relief from a paternity judgment faces an elevated standard where prior admissions, certifications of parentage, and DNA test results are in the record. See F.B. v. A.L.G., 176 N.J. 201 (2003). Authentication of scientific evidence for purposes of admission requires the proponent to present sufficient evidence to support a finding the item is what it purports to be. N.J.R.E. 901. The chain of custody, documentation, thumbprints, and identification are all relevant to this inquiry.

As found by the trial judge, defendant submitted a genetic sample on June 11, 2018 at the Essex County Courthouse, with a signature, thumbprint, and

6

photograph. Plaintiff and the minor child provided samples on February 1, 2019 at LabCorp's Bethlehem, Pennsylvania facility. LabCorp, an accredited facility, processed the samples and reported a 99.99 percent probability of paternity. Notification letters dated February 8, 2019 were sent to both parties stating the result. From this record, we conclude defendant presented no credible evidence to the judge to suggest the results were unreliable as a result of tampering, mislabeling, or substitution. Defendant provided no expert testimony, contradictory documentation, or any credible basis to disturb the court's findings. Moreover, defendant's bare assertions that Essex County "declared the results fraudulent" are belied by the record.

While defendant contends procedural irregularities occurred, particularly in the time gap between the collection of the samples and the publication/issuance of the LabCorp results, these delays were caused by plaintiff's relocation to Pennsylvania, where she subsequently complied with the testing requirement and provided samples for herself and Kelly to LabCorp. We concur with Judge DeMarzo's findings that there is no evidence that the integrity of the testing process or chain of custody was compromised.

In addition, at the October 13, 2023 hearing, defendant confirmed under oath he was Kelly's father after the court referenced the genetic testing results.

7

Even if defendant is correct that he never signed the certificates, he did not challenge the 2019 genetic testing result until 2023, despite notification of the results in February 2019. Nevertheless, the trial court reviewed all of the evidence on the merits, including the genetic testing and found defendant was the father based on substantial, credible evidence in the record, thus, the court's finding is entitled to deference. Voynick, 481 N.J. at 220-21.

We now turn to defendant's assertion of extrinsic fraud related to the court procedures to obtain the genetic testing of the parties and child. Extrinsic fraud that would justify equitable relief is such that the party asserting it has been deprived of a fair process. See Zelek v. Brosseau, 47 N.J. Super. 521 (App. Div. 1957). Here, the record exhibits the defendant was properly notified and was given an opportunity to contest paternity, including access to the genetic testing and results. Defendant's assertion that he did not receive the 2019 results until years later does not establish a fraudulent withholding or unreliability in the testing procedures, but instead reflects his own failure to follow up with a request to review the results in a timely manner.

We further determine the record does not support defendant's claims of bias by the judge. We note "judges must avoid acting in a biased way or in a manner that may be perceived as partial." DeNike v. Cupo, 196 N.J. 502, 514

A-0631-24

(2008) (emphasis omitted). However, "bias is not established by the fact that a litigant is disappointed in a court's ruling on an issue," and the litigant's "belief that the proceedings were unfair must be objectively reasonable." State v. Marshall, 148 N.J. 89, 186, 279 (1997). The record here does not exhibit objective proof of conduct by the judge manifesting prejudice or partiality that affected the fairness of the hearing. Although defendant objects to certain comments made by the court, we conclude the remarks did not show judicial bias affecting the outcome. Nor can we conclude any comments of the judge would override the evidence supporting the judge's denial of defendant's motion, including the certificate of parentage signed by defendant, his admissions of paternity and, most importantly, conclusive documentary and scientific proof of his paternity presented through genetic testing. The record shows the court permitted defendant and his attorney to fully present his case, make inquiries, and respond to questions, which we conclude resulted in a fair hearing.

To the extent we have not addressed any of defendant's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0631-24