170 N.J. Super. 437 (1979)
406 A.2d 994
LUMBERMENS MUTUAL CASUALTY COMPANY, A CORPORATION, PLAINTIFF,
v.
ESTHER COHEN CARRIERE, DEFENDANT, AND NICHOLAS CARRIERE, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 30, 1979.
*440 Mr. Raymond J. Lamb for plaintiff (Messrs. Lamb, Hutchinson, Chappell, Ryan and Hartung, attorneys).
Mr. Michael L. Carlin of the New York Bar admitted pro hac vice, and Mr. Steven Rubenstein for defendant Esther Cohen Carriere, (Messrs. Rubenstein and Sherwood, attorneys).
No appearance was entered on behalf of defendant Nicholas Carriere.
Mr. Peter D. Pizzuto, Deputy Attorney General for James J. Sheeran, Commissioner of Insurance, intervenor (John J. Degnan, Attorney General, of New Jersey, attorney).
LONG, J.S.C.
This case involves the question of whether an insurer properly notified its insured of the availability of additional personal injury protection coverage pursuant to N.J.S.A. 39:6A-10, and if not, whether the remedy of reformation of the policy can be *441 invoked by the insured who has sustained a loss for which such additional coverage would have been available.
The procedural and factual background of this case was explicated by the Appellate Division in a decision reported at 163 N.J. Super. 7. This history is incorporated herein as if specifically set forth. The basic facts of the case are as follows: Esther Carriere and her husband was covered by a public automobile liability policy of insurance issued by plaintiff Lumbermens Mutual Casualty Co. in 1969. In early December 1972, pursuant to the provisions of the newly enacted New Jersey Automobile Reparation Reform Act (N.J.S.A. 39:6A-1 et seq.), Lumbermens notified the Carrieres, in writing, of the promulgation of the new law and the options available to them for additional personal injury protection (P.I.P.). Mr. & Mrs. Carriere read the letter and agreed on additional coverage. Upon notification as to the Carrieres' decision, on January 16 Lumbermens issued an additional P.I.P. endorsement with (among other things) a maximum loss of income benefit of $41,600 ($5,200 pursuant to N.J.S.A. 39:6A-4 and $36,400 pursuant to N.J.S.A. 39:6A-10). The endorsement provided coverage to "(1) the named insured and his spouse if a resident of the same household."
Mr. & Mrs. Carriere separated in January 1973. In March 1973 she was involved in an accident and sustained serious personal injuries in a vehicle listed as covered in the policy. She made a claim for income continuation benefits under the policy and Lumbermens denied liability on the basis that she was not a resident of the same household as the named insured, her husband, and did not, in any event, sustain any loss of income because she was not employed at the time of the accident. She subsequently instituted suit in New York (where she resides) and recovered a judgment of $10,551 against Lumbermens based on findings that she was entitled to coverage under the policy and was employed at the time of the accident, thereby sustaining an income loss. Lumbermens paid the judgment in full and *442 continued to pay Mrs. Carriere income continuation benefits until April 1975, at which point she had been paid the $41,600 maximum provided by the endorsement. Mrs. Carriere then filed another suit in New York, claiming that Lumbermens had failed to provide her the option of additional income continuation benefits for so long as her disability persisted, as required by N.J.S.A. 39:6A-10. Lumbermens then filed a declaratory judgment action in New Jersey which the trial judge dismissed by reasons of comity. It was that decision which was reversed by the Appellate Division.
Pursuant to the Appellate Division decision, Lumbermens then filed and served the amended complaint which is the subject of this action. The complaint sought the following declarations: that Lumbermens had met the requirements of N.J.S.A. 39:6A-10 by offering extended benefits to defendants Esther Carriere and her husband, the named insured, by letter of December 1972, and that even if the letter did not apprise Mrs. Carriere of the availability of extended benefits as required by statute, she was not entitled to reformation of the policy to provide the coverage in question because (a) she was not the named insured and (b) she was guilty of fraud and misrepresentation when she represented to the New York court that she was employed at the time of the accident and lost income by reason thereof.
Subsequently, Lumbermens moved for discovery of Mrs. Carriere with respect to the alleged fraud on the New York court. Mrs. Carriere then filed a motion for summary judgment declaring that Lumbermens failed to offer coverage in accordance with the statute; that accordingly she is entitled to reformation, and that the fraud and misrepresentation defenses are barred by the doctrines of collateral estoppel, res judicata and full faith and credit. This is a decision on the above motions.
The first issue is whether Lumbermens' notification of additional personal injury protection to Mrs. Carriere met the requirements of N.J.S.A. 39:6A-10, which provides:

*443 Insurers shall make available to the named insured covered under section 4, suitable additional first-party coverage for income continuation benefits, essential services benefits, survivor benefits and funeral expenses benefits. Income continuation in excess of that provided for in section 4 must be provided as an option by insurers to persons for disabilities, as long as the disability persists, up to an income level of $35,000.00 per year, with the excess between $5,200.00 and the amount of coverage contracted for to be written on the basis of 75% of said difference. The Commissioner of Insurance is hereby authorized and empowered to establish, by rule or regulations, the amounts and terms of income continuation insurance to be provided pursuant to this section.
When interpreting a statutory mandate such as this the court must look to the intention of the Legislature in enacting it. State v. Madden, 61 N.J. 377 (1972). Such legislative intent should be gleaned from the language of the enactment itself, and the court should not, through surmise or external considerations, ignore or depart from the clear meaning of an unambiguous act. Bravand v. Neeld, 35 N.J. Super. 42 (App. Div. 1955). Here the language of the statute is crystal clear. It indicates that the Legislature intended to place upon the insurer the obligation of making additional coverage to that provided in N.J.S.A. 39:6A-4 available to the named insured at his or her option, including income continuation benefits so long as the disability exists. This intention was expressed in the Automobile Insurance Study Commission's report to the Governor and the Legislature ("Reparation Reform for New Jersey Motorist," December 1971), which stated (at XVII) that the purpose of offering excess loss coverage under N.J.S.A. 39:6A-10 was to provide for "those motorists who desire a greater degree of first-party insurance protection, and are willing to pay for the additional premium charge." See also, General Accident Group v. Shimp, 147 N.J. Super. 404 (Law Div. 1977).
In furtherance of the statute the Commissioner of Insurance promulgated N.J.A.C. 11:3-7.3, which provides as follows:
11:3-7.3 Minimum schedule of additional personal injury protection
(a) Appendix A outlines the minimum schedule of "additional personal injury protection" coverage benefits that insurers must make available in accordance with Section 10 of the Act.

*444 (b) In the Appendix A table, only five weekly indemnity schedules are shown, with a two-year benefit duration. It is believed that these ranges of benefits will meet the demand for this additional coverage in most cases.
(c) Consequently, at least for the initial period, it will be sufficient if your manuals exhibit these minimum benefit schedules with corresponding rates.
(d) However, benefits in excess of those set forth in Appendix A must be made available at the option of the named insured at reasonable intervals subject to the specific approval by the Commissioner, up to a maximum additional weekly loss of income benefit of $35,000. per year, as well as reasonable essential service benefits, survivor benefits and funeral expense benefits, as required by Section 10 of the Act.
Appendix A to the regulation lays out the following schedule:

APPENDIX A

ADDITIONAL PERSONAL INJURY PROTECTION

 Maximum Additional Weekly
 Loss of Income Benefit
 During After Total
 Period of Basic Period of Basic Maximum
 Benefits Payments Benefits Payments Income Benefits
 (a) (b)
 1. $0 $100 $5,200
 2. 25 125 7,800
 3. 75 175 13,000
 4. 150 250 20,800
 5. 300 400 36,400
 Maximum Additional
 Essential Services
 During After
 Basic Basic Total Death
 Payments Payments Max. Benefits (c)
 E. Serv.
 1. $0 $12 $4,380 $10,000
 2. 8 20 10,220 10,000
 3. 8 20 10,220 10,000
 4. 8 20 10,220 10,000
 5. 8 20 10,220 10,000

The regulation and its appendix carry forth the legislative intent of N.J.S.A. 39:6A-10 by setting up a schedule of optional additional personal injury protection coverage pursuant to the act. While recognizing that that schedule of five options would meet the demand for coverage in most cases, the Commissioner iterated, in the language of the statute, that benefits in excess of those in Appendix A were required to be made available at the option of the named insured. This language refers to the statutory mandate for income continuation benefits for as long as the disability persists.
In addition to enacting the regulation, the Commissioner notified insurers that policy holders should be apprised of the coverage available under the act, and promulgated a form letter for that purpose. Insurers were not required to use the Commissioner's form letter, but to the extent that the insurer's form *445 letter varied from the Commissioner's in substance, his approval thereof was required. (There has been no suggestion by any party in this case that Lumbermens ever asked for or received approval of its letter from the Commissioner.)
The Commissioner's letter provided:
As a part of each loss of income benefit there are included additional benefits for essential services and a $10,000. death benefit. Please refer to the enclosed "Offer to Purchase Additional Coverage" for further details of these options. If you desire coverage in excess of those quoted above, inquire directly of your [company] [agent].
The "Offer to Purchase Additional Coverage" form attached to the letter provided the five options which appear in Appendix A to the regulation. However, it also included a statement that "Broader forms of additional personal injury protection benefits are available on a `refer to company' basis."[1]
*446 At this juncture, it is unnecessary to determine whether the Commissioner's letter had the net effect of notifying the insured of the availability of additional coverage under N.J.S.A. 39:6A-10 since no party has challenged the validity of that letter. As the Commissioner notes, such an opinion might well be purely advisory. Grand Union Co. v. Sills, 43 N.J. 390 (1964). Nor will this court be called upon to implicitly render an opinion on the Commissioner's letter (which would occur upon the finding that Lumbermens' letter did not differ from the Commissioner's in substance) since I find that Lumbermens' letter differs materially from that of the Commissioner and in addition fails to meet the statutory mandate.
Lumbermens' form letter contains the following relevant language:
As a part of each loss of income benefit there are included additional benefits for essential services and a $10,000. death benefit. Please refer to the enclosed "Optional Coverage Selection Form" for further details of these options. If you desire additional information on optional coverages, inquire directly of your agent.
The first two sentences are similar to the Commissioner's. The third sentence varies from the Commissioner's in a critical respect  it does not include the language "if you desire coverage in excess of those quoted above." Instead Lumbermens has substituted "if you desire additional information on optional coverages." The fair import of Lumbermens' letter is that additional information with respect to five options outlined in the "Optional Coverage Selection Form" is available. That schedule does nothing to allay this view. For unlike the Commissioner's "Offer to Purchase Additional Coverage" attachment *447 which iterates that broader forms of coverage are available to an insured, Lumbermens' "Optional Coverage Selection Form" is devoid of any such reference.[2] It is in this respect that Lumbermens' letter diverges from the Commissioner's and fails to meet the statutory mandate. The fact of the matter is that the clear words of Lumbermens' letter leave no room to conclude that the requirements of N.J.S.A. 39:6A-10 have been *448 met, either directly or indirectly. Indeed, the reasonable man reviewing Lumbermens' letter could under no circumstances conclude that anything more than the five options provided on the "Optional Coverage Selection Form" were available. This is not an issue of interpretation upon which a reasonable difference of opinion could be based. Indeed, the only way that Lumbermens' letter could be considered to meet statutory muster would be by reading into it something which simply is not there. Thus, it is clear that Lumbermens failed to offer Mrs. Carriere additional income continuation benefits for the extent of her disability, as required by N.J.S.A. 39:6A-10.
Mrs. Carriere argues that the failure of the insurer to offer her income continuation benefits in accordance with the provisions of N.J.S.A. 39:6A-10 entitles her to reformation of the policy to include that coverage. The decision in Peraglia v. Jones, 120 N.J. Super. 518 (App.Div. 1972), is supportive of reformation as an appropriate remedy here. In Peraglia the statute required insurance companies to offer uninsured motorists' coverage and to obtain a written election from the named insured either rejecting or accepting such offer. Upon a finding that such coverage was not offered by the insurer, the court declared that reformation of the contract to include such coverage upon the payment of the additional premium was the proper remedy. There, as here, an accident had already taken place so that benefits under the reformed policy would be due. The court allowed reformation to include the uninsured motorists' coverage without the need for further proceedings because the law imposed the burden of offering that coverage on the insurer, which burden had not been met.[3]
*449 Like the statute in Peraglia, the act at bar is entitled to liberal construction. N.J.S.A. 39:6A-16. Moreover, the potential distinction between the statutes suggested by the Commissioner is not accurate. The Commissioner states that
In Peraglia, the optional insurance was to be provided unless the insured expressly declined coverage, while in the present case, the optional coverage is to be provided upon request of the insured.
While there are uninsured motorist statutes which read as the Commissioner suggests (Michigan for example, M.S.A. § 24.-13010), the Peraglia statute does not happen to be one of them. Indeed, it states that "such election shall be in writing and upon receipt thereof by the insurer such coverage shall or shall not be provided in the policy according to said election." N.J.S.A. 17:28-1.2. This language is important because it points up the parallels between the statute in Peraglia and that in the case at bar. In both cases the coverage must, by statute, be offered and in both cases the insured must elect such coverage. The statute in Peraglia does not provide, as has been suggested, that automatic coverage would accrue if the insured failed to reject the coverage. As such, I find that Peraglia provides support for the view that reformation of the policy to provide income continuation benefits for so long as the disability persists should be available to Mrs. Carriere.
Lumbermens argues against reformation because it says that Mrs. Carriere is not the "named insured" under the policy and that therefore the option under N.J.S.A. 39:6A-10 did not have to be offered to her. Lumbermens asserts in this connection that Mr. and Mrs. Carriere had agreed to separate at the time the option was offered. It does not dispute the fact, however, that the Carrieres were living together when the option letter was received and that indeed they discussed the options and agreed between themselves to choose option No. 5. *450 Lumbermens seeks comfort in this connection from N.J.A.C. 11:3-7.1(2), which provides:
In Section 2G, "named insured" means the person(s) or the organization named in the declaration of the policy and, if an individual, shall include the spouse if a resident of the same household.
Even the most strained reading of this regulation fails to support Lumbermens' view of its meaning. For there is no question but that Mrs. Carriere was a resident of the same household as her husband when the option letter was received. As such, she falls clearly within the category of "named insured" under the regulation. Even if an argument could be constructed by Lumbermens that her intention to move should carry some weight, she would still be "named insured" under the definition in the statute, N.J.S.A. 39:6A-2(g), which provides:
"Named insured" means the person or persons identified as the insured in the policy and, if an individual, his or her spouse.
As such, Lumbermens' assertion that it owed no duty to Mrs. Carriere in connection with N.J.S.A. 39:6A-10 as a defense to reformation is without merit.
Next, Lumbermens raises the question of Mrs. Carriere's alleged perjury before the New York court on the issue of her employment at the time of the accident, as a bar to reformation. Mrs. Carriere says that these fraud and misrepresentation issues are barred by collateral estoppel and full faith and credit. All of these charges center around the damages suffered by Mrs. Carriere. In the New York suit she alleged and recovered a verdict for lost wages as a result of the accident. Lumbermens alleges that Mrs. Carriere, in fact, was not working at the time of the accident but was receiving moneys owed her by her husband from the dissolution of their partnership pursuant to a pre-divorce property settlement agreement. Obviously, if Mrs. Carriere's income status at the time of the accident was as Lumbermens alleges, she would not be entitled to the income *451 continuation benefits she now claims. However, the New York court found otherwise, to wit, that she was employed at the time of the accident. Significantly, Lumbermens moved the trial court in New York to set aside the verdict for fraud, misrepresentation and newly discovered evidence on this issue. The motion was denied and the denial affirmed by the Appellate Division of the Supreme Court.
The question here is whether the allegation of false testimony by the procurer of judgment is the kind of fraud which would permit our courts to go beyond the face of the foreign judgment and grant the remedy sought here  denial of reformation. The basic, controlling principle is that the forum state should accord the foreign judgment the same degree of credit, status and immunity from attack which the judgment would be accorded in the state where rendered. Johnson v. Muelberger, 340 U.S. 581, 584, 71 S.Ct. 474, 95 L.Ed. 552 (1951); 168 A.L.R. 656 (1947). Thus, full faith and credit is not denied where the forum allows defenses to an attempt to enforce the foreign judgment which would be entertained by the courts of the rendering state in a similar proceeding. People of State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 614, 615, 67 S.Ct. 903, 91 L.Ed. 1133 (1947); Casteel v. Casteel, 45 N.J. Super. 338, 350 (App.Div. 1957); Goodrich, Conflict of Laws (3 ed. 1949), § 218 at 614-617; 2 Beale, Conflict of Laws, § 440.1 at 1401 (1935). This principle has been recognized by the courts of this State in the context of attacks upon foreign judgments as having been procured by fraud. Zelek v. Brosseau, 47 N.J. Super. 521 (App.Div. 1957); Second National Bank of Philadelphia v. Thompson, 141 N.J. Eq. 188 (Ch. 1947).
In Puzio v. Puzio, 57 N.J. Super. 557 (App.Div. 1959), the court refused to deny recognition to a New York money judgment allegedly procured by perjured testimony, and in so doing discussed Zelek & Thompson:

*452 The Zelek case involved alleged perjury in the proof of the cause of action, as here, and the Thompson case a confession of judgment by warrant incorporated in a bond supported by a false affidavit, the circumstances satisfying the court that the rendering state would regard the judgment as void (141 N.J. Eq. at page 202). In Zelek, however, the court denied relief, applying a presumption that the rendering state would not have entertained the attack on the ground asserted. [at 557]
No such abstract examination of what the rendering state, New York, would do is necessary here, for the New York court that rendered the judgment at issue was presented with a motion to set the judgment aside on the basis of fraud and newly discovered evidence and denied the motion. This denial was upheld on appeal. No more need be said. For the rendering state has not permitted the judgment to be assailed, and this forum should accord to the foreign judgment the same degree of credit, status and immunity from attack which the judgment not only would be but was accorded in the state where rendered. New York has refused to set aside the judgment on the grounds of fraud. We should do no less.
Nor is Mrs. Carriere's alleged perjury in establishing the merits of the cause of action, resulting in the New York judgment, such unclean hands as in and of itself warrants refusing recognition otherwise required by the interpretive rules of full faith and credit. Such a conclusion would be to undermine the full faith and credit mandate by indirection. Puzio v. Puzio, supra. The result is not called for by the facts.
Full faith and credit issues aside, the general rule is that fraud which will furnish the basis for equitable relief from a judgment must be extrinsic as opposed to intrinsic. This rule also supports the conclusion that the New York judgment in this case is not subject to collateral attack. Extrinsic fraud which justifies equitable relief is such that the party asserting it has been deprived of a fair trial. Zelek v. Brosseau, supra; Restatement, *453 Judgments, §§ 119-125 at p. 579 et seq. Some examples of this would be where a party was not apprised of the pendency of the action, or where he did not defend through no fault of his own. Contrariwise, the mere allegation of perjured testimony is intrinsic fraud which goes to the cause of action itself and not the fairness of the process. This will not justify equitable relief from the judgment. Zelek v. Brosseau, supra. Here there is no claim of unfairness in the procedure of the New York trial but for Mrs. Carriere's alleged perjury. This does not entitle Lumbermens to relief from that Judgment.
Mrs. Carriere is entitled to reformation of the policy to include income continuation benefits for as long as her disability exists according to the requirements of N.J.S.A. 39:6A-10 upon payment of the required premium. Reformation is the only meaningful remedy in this case since Mrs. Carriere has been required to institute and defend several law suits solely for the purpose of obtaining the coverage which the Legislature required Lumbermens to make available to her, but which Lumbermens failed to do. Any remedy short of reformation would reward Lumbermens for failing to adhere to the statutory mandate.
To the extent that Lumbermens' motion for discovery of Mrs. Carriere involves issues of fraud and misrepresentation, it is denied.
NOTES
[1] A
Additional Personal Injury Protection

 ----------------------------------------------------------------
 Maximum Additional Weekly
 Loss of Income Benefit
 ----------------------------------------------------------------
 During | After | Total
 Period of Basic | Period of Basic | Maximum
 Benefits Payments[*] | Benefits Payments @ | Income Benefits
 --------------------|-----------------------|------------------
 | $ 0 | $100 | $ 5,200
 |--------------------|-----------------------|------------------
 | 25 | 125 | 7,800
 |--------------------|-----------------------|------------------
 | 75 | 175 | 13,000
 |--------------------|-----------------------|------------------
 | 150 | 250 | 20,800
 |--------------------|-----------------------|------------------
 | 300 | 400 | 36,400
 ---------------------------------------------------------------

 ---------------------------------------------------------------
 | Maximum Additional |
 | Essential Services |
 |---------------------------------------------|
 | During | After | Total |
 | Basic | Basic | Max. | Death
 | Payments | Payments | E. Serv. | Benefit #
 |-------------|----------------|--------------|-----------------
 | $0 | $12 | $ 4,380 | $10,000
 |-------------|----------------|--------------|-----------------
 | 8 | 20 | 10,220 | 10,000
 |-------------|----------------|--------------|-----------------
 | 8 | 20 | 10,220 | 10,000
 |-------------|----------------|--------------|-----------------
 | 8 | 20 | 10,220 | 10,000
 |-------------|----------------|--------------|-----------------
 | 8 | 20 | 10,220 | 10,000
 ---------------------------------------------------------------

Subject to 75% of the amount of weekly income in excess of $100 per week. Subject to 75% of the total weekly income. Applicable to the Named Insured as defined. Limits apply per person, per accident. The Death Benefit shall be payable provided death occurs within 90 days from the date of the accident.
Broader forms of additional personal injury protection benefits are available on a "refer to Company" basis.
Note: Nothing herein is intended to prohibit the marketing of Additional Coverage on a per car basis.
[2] ------------------------------------------------------------------
| OPTIONAL COVERAGE |
| SELECTION FORM |
| |
| If you desire one of the Additional PIP Coverage options, simply |
| check the appropriate blocks below, sign and print your name and |
| address in the space provided, and return this to your agent. |
| |
| Maximum |
| Benefits For Additional Weekly |
| Check Option Additional Benefit After Period |
| Desired Protection of Basic Benefits |
| |
| [] Option 1 $ 5,200 $100 |
| [] Option 2 $ 7,800 125 |
| [] Option 3 $13,000 175 |
| [] Option 4 $20,800 250 |
| [] Option 5 $36,400 400 |
| |
| Name (please sign) _____________________________________________ |
| |
| Name (please print) ____________________________________________ |
| |
| Street _________________________________________________________ |
| |
| City ______________________ State ___________________ Zip ______ |
| |
| -------- |
| | Kemper | |
| -------- |
| |
| INSURANCE |
| |
| AK 1507 N.J. 11-72 20M Printed in U.S.A. |
------------------------------------------------------------------

[3] Although Lumbermens argues that supplemental factfinding is necessary as to whether Mrs. Carriere would have opted for the coverage, and as to the amount of premium to be paid, I find that the decision in Peraglia implicitly rejects this view and that factfinding on these issues is, in any event, unnecessary.