250 N.J. Super. 580 (1991)
595 A.2d 1110
MARY WERTS, PLAINTIFF-APPELLANT,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY AND JAMES E. CROWTHER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1991.
Decided September 5, 1991.
*581 Before Judges LONG and R.S. COHEN.
Richard S. Hoffman argued the cause for appellant (Hoffman, DiMuzio, & Marcus, attorneys).
Donald Caruthers, III argued the cause for respondents (Yampell, Nicodemo & Caruthers, attorneys).
The opinion of the court was delivered by LONG, J.A.D.
*582 In 1981, defendant New Jersey Manufacturers Insurance Company issued an automobile insurance policy to Mary Werts which was renewed yearly thereafter. In 1984, Werts was involved in a single-car accident which left her permanently disabled. She received basic income continuation benefits pursuant to N.J.S.A. 39:6A-4b and opted for added income continuation benefits of $175 per week up to a limit of $18,200. When this limit was reached and defendant refused further payment, Werts instituted this action for reformation of the insurance contract to include income continuation benefits "for so long as the disability may persist" and for recovery of all unpaid benefits, on the ground that defendant never offered her the coverage required under the New Jersey Automobile Reparation Reform Act (No-Fault Law or the Act) (N.J.S.A. 39:6A-10) and the regulation promulgated thereunder (N.J.A.C. 11:3-7.3).
In response, defendant claimed to have fulfilled all of its statutory, regulatory and contractual obligations to plaintiff. Defendant moved for summary judgment on the issue of income continuation benefits which motion was granted. This appeal by Werts followed. We have carefully reviewed this record in light of Werts's contentions and have concluded that defendant's motion for summary judgment was properly granted. We affirm.
In 1973, the No-Fault Law came into effect. The statute provided in relevant part that:
Every automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide additional coverage, as defined herein below, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an automobile accident, to other persons sustaining bodily injury while occupying the automobile of the named insured or while using such automobile with the permission of the named insured and to pedestrians, sustaining bodily injury caused by the *583 named insured's automobile or struck by an object propelled by or from such automobile. "Additional coverage" means and includes:
....
b. Income continuation benefits. The payment of the loss of income of an income producer as a result of bodily injury disability, subject to a maximum weekly payment of $100.00, per week. Such sums shall be payable during the life of the injured person and shall be subject to an amount or limit of $5,200.00, on account of injury to any one person, in any one accident. [L. 1972, c. 70, § 4].[1]
In another section, the statute provided:
Additional personal injury protection coverage. Insurers shall make available to the named insured covered under section 4, suitable additional first-party coverage for income continuation benefits, essential services benefits, survivor benefits and funeral expense benefits. Income continuation in excess of that provided for in section 4 must be provided as an option by insurers to persons for disabilities, as long as the disability persists, but not beyond age 65, up to *584 an income level of $35,000.00 per year, with the excess between $5,200.00 and the amount of coverage contracted for to be written on the basis of 75% of said difference. The Commissioner of Insurance is hereby authorized and empowered to establish, by rule or regulations, the amounts and terms of income continuation insurance to be provided pursuant to this section. [L. 1972, c. 70, § 10].[2]
In response to the Legislature's mandate, the Commissioner promulgated N.J.A.C. 11:3-7.3 which prescribed:
(a) Appendix A outlines the minimum schedule of "additional personal injury protection" coverage benefits that insurers must make available in accordance with Section 10 of the Act.
(b) In the Appendix A table, only five weekly indemnity schedules are shown, with a two-year benefit duration. It is believed that these ranges of benefits will meet the demand for this additional coverage in most cases.
(c) Consequently, at least for the initial period, it will be sufficient if your manuals exhibit these minimum benefit schedules with corresponding rates.
(d) However, benefits in excess of those set forth in Appendix A must be made available at the option of the named insured at reasonable intervals subject to the specific approval by the Commissioner, up to a maximum additional weekly loss of income benefit of $35,000 per year, as well as reasonable essential service benefits, survivor benefits and funeral expense benefits, as required by Section 10 of the Act. [4 N.J.R. 270 (Nov. 9, 1972)].
The following is the Appendix referred to in the rule:

APPENDIX A

 Additional Personal Injury Protection
 Maximum Additional Weekly Maximum Additional
 Loss of Income Benefit Essential Services
 During After Total During After Total Death
 Period of Period of Maximum Basic Basic Max. Benefits
 Basic Basic Income Payments Payments E. Serv [(c)]
 Benefits Benefits Benefits
 Payments Payments
 [(a)][(b)]

*585
1. $ 0 $100 $5,200 $0 $12 $4,380 $10,000
2. 25 125 7,800 8 20 10,220 10,000
3. 75 175 13,000 8 20 10,220 10,000
4. 150 250 20,800 8 20 10,220 10,000
5. 300 400 36,400 8 20 10,220 10,000

GENERAL: Above schedules applicable to named insured as defined; limits apply per person, per accident. Broader forms of additional personal injury protection benefits are available on a "refer to company" basis. Nothing herein is intended to prohibit the marketing of additional coverage on a per-car basis (emphasis added). [4 N.J.R. 271 (Nov. 9, 1972)].
In addition, the Commissioner notified insurers that policy holders should be advised of the coverage available under the Act, and promulgated a form letter for that purpose. The Commissioner's letter provided:
As a part of each loss of income benefit there are included additional benefits for essential services and a $10,000 death benefit. Please refer to the enclosed "Offer to Purchase Additional Coverage" for further details of these options. If you desire coverage in excess of those quoted above, inquire directly of your [company] [agent]. [Emphasis added].
The form letter contained the five options outlined in Appendix A above, and included the language of the appendix note that: "Broader forms of additional personal injury protection benefits are available on a `refer to company' basis." Lumbermens Mutual Casualty Co. v. Carriere, 170 N.J. Super. 437, 444-445, 406 A.2d 994 (Law Div. 1979). In 1982, N.J.A.C. 11:3-7.3 was amended to read:
(a) Table 1 in N.J.A.C. 11:3-7.7(b) outlines the minimum schedule of "additional personal injury protection" coverage benefits that insurers must make available in accordance with N.J.S.A. 39:6A-10.
(b) The additional coverage shall be offered by the insurer at least annually on a form attached to or accompanying all applications, initial policies or notices (see N.J.S.A. 39:6A-10, as amended by L. 1981 c. 533).

*586 (c) Each insured shall be provided with a form on which he may conveniently indicate any chage in benefits desired. [14 N.J.R. 544 (June 7, 1982)].
11:3-7.7 provides in pertinent part:
(a) Additional personal injury protection coverage: Every rate filer shall submit a proposed schedule of rates to provided at least the benefit schedules set forth in Table 1 in (b) below.
(b) The additional personal injury protection coverage table follows:

 Table 1
 Income Essential Services
Option Weekly Total Per Day Total Death
 1 $100 $10,400 $12 $8,760 $10,000
 2 125 13,000 20 14,600 10,000
 3 175 18,200 20 14,600 10,000
 4 250 26,000 20 14,600 10,000
 5 400 41,600 20 14,600 10,000
 6 500 52,000 20 14,600 10,000
 7 600 62,400 20 14,600 10,000
 8 700 72,800 20 14,600 10,000

(c) The following rules apply to Table 1 in (b) above.
1. The benefit indicated in each option for Income Benefits and Essential Services Benefits is the aggregate of the Basic and Additional Personal Injury Protection Benefits.
2. The additional personal injury protection income benefits are limited to 75 percent of the insured's weekly income.
3. Limits apply per person, per accident.
4. Death Benefits shall be payable provided death occurs within 90 days from the date of the accident.
(d) Broader forms of additional injury protection benefits may be made available on a "refer to Company" basis.

(e) Nothing in this section is intended to prohibit the marketing of Additional Coverage on a per car basis (emphasis added). [14 N.J.R. 545 (June 7, 1982)].
The same regulations were revised and recodified in 1985.
N.J.A.C. 11:3-7.4 provided:
(a) Additional personal injury protection coverage: Every rate filer's schedule of rates shall provide at least the benefit schedules set forth in Table 1 in (b) below.
(b) The additional personal injury protection coverage table follows:

*587
 Table 1
 Income Essential Services
Option Weekly Total Per Day Total Death
 1 $100 $10,400 $12 $8,760 $10,000
 2 125 13,000 20 14,600 10,000
 3 175 18,200 20 14,600 10,000
 4 250 26,000 20 14,600 10,000
 5 400 41,600 20 14,600 10,000
 6 500 52,000 20 14,600 10,000
 7 600 62,400 20 14,600 10,000
 8 700 72,800 20 14,600 10,000
 9 100 unlimited 12 8,760 10,000
 10 125 unlimited 20 14,600 10,000
 11 175 unlimited 20 14,600 10,000
 12 250 unlimited 20 14,600 10,000
 13 400 unlimited 20 14,600 10,000
 14 500 unlimited 20 14,600 10,000
 15 600 unlimited 20 14,600 10,000
 16 700 unlimited 20 14,600 10,000

(c) The following rules apply to Table 1 in (b) above.
1. The benefit indicated in each option for Income Benefits and Essential Services Benefits is the aggregate of the Basic and Additional Personal Injury Protection Benefits.
2. The additional personal injury protection income benefits are limited to 75 percent of the insured's weekly income.
3. Limits apply per person, per accident.
4. Death benefits shall be payable provided death occurs within 90 days from the date of the accident.
(d) Income continuation benefits for as long as the disability persists shall be made available by each insurer. Rates for such benefits shall be given when requested by the insured.

(e) Nothing in this section is intended to prohibit the marketing of Additional Coverage on a per car basis (emphasis added). [17 N.J.R. 708 (March 18, 1985)].[3]
Defendant acknowledges that its 1981 offering to Werts did not contain any information about income continuation *588 benefits "for as long as the disability persists." It argues that the decision in Olivero v. New Jersey Mfrs. Ins. Co., 227 N.J. Super. 367, 547 A.2d 710 (App.Div. 1988), certif. denied, 115 N.J. 76, 556 A.2d 1219 (1989), established that such benefits did not have to be offered until 1982 and that therefore the initial insurance contract with Werts conformed with all applicable laws. We disagree with this argument and with Olivero. Contrary to Olivero, we conclude that, since its inception in 1973, N.J.S.A. 39:6A-10 has mandated that insurers provide income continuation benefits "for as long as the disability persists." Indeed, the statute explicitly states that such coverage "must" be provided. Where a statute is clear on its face, we need not look behind the statutory terms to divine legislative intent. State v. Churchdale Leasing, Inc., 115 N.J. 83, 101, 557 A.2d 277 (1989). Apparently, the Commissioner interpreted the Act as we do, since the regulation enacted on the heels of the statute repeated the mandatory theme: "benefits in excess of those set forth in Appendix A must be made available at the option of the named insured...." 4 N.J.R. 270 (Nov. 9, 1972); N.J.A.C. 11:3-7.3 (emphasis added). That the availability of such coverage is mandatory could not be clearer. As was said in Lumbermens, supra, 170 N.J. Super. at 444, 406 A.2d 994 (emphasis supplied):
The regulation and its appendix carry forth the legislative intent of N.J.S.A. 39:6A-10 by setting up a schedule of optional additional personal injury protection coverage pursuant to the act. While recognizing that that schedule of five options would meet the demand for coverage in most cases, the Commissioner iterated, in the language of the statute, that benefits in excess of those in Appendix A were required to be made available at the option of the named insured. This language refers to the statutory mandate for income continuation benefits for as long as the disability persists.
Olivero relied on the Commissioner's "regulations and directives" in reaching a contrary conclusion. Without belaboring the point, we think the Commissioner was without power to eliminate a class of coverage mandated by the Legislature. "[A]n administrative regulation may not narrow or restrict the scope of an otherwise specific and clearly-worded statute." Terry v. Harris, 175 N.J. Super. 482, 496, 420 A.2d 353 (Law *589 Div. 1980). Thus, even if the Olivero conclusion had been the Commissioner's intention here, it could not be countenanced. More importantly, we do not believe that the Commissioner ever contemplated the Olivero result. His initial regulation enacted in 1972 (effective January 1, 1973) replicated the mandatory language of the statute by providing that "benefits in excess of those set forth in Appendix A "must be made available." 4 N.J.R. 270 (Nov. 9, 1972); N.J.A.C. 11:3-7.3. His regulation in 1985 repeated the theme: "Income continuation benefits for as long as the disability persists shall be made available ..." 17 N.J.R. 708 (March 18, 1985); N.J.A.C. 11:3-7.4 (emphasis added). The current regulation provides: "Each insurer shall make available as an option additional income continuation benefits for as long as the disability persists." N.J.A.C. 11:3-7.2(e) (emphasis added). While, as Olivero pointed out, the Commissioner allowed insurers to limit their manuals initially to the five weekly indemnity schedules, this was no indication that that coverage was all that was available. In fact, N.J.A.C. 11:3-7.3(b) explained the reason for this: "It is believed that these ranges of benefits will meet the demand for this additional coverage in most cases." 4 N.J.R. 270 (Nov. 9, 1972) (emphasis added). The rule went on to enunciate that benefits "in excess" of the five outlined "must be made available." Id. The interim 1982 revision which states that broader forms of coverage "may be made available" on a "refer to Company" basis is no support for Olivero. "May," as used in that section, obviously refers to the method of offer  either on a refer to company basis or more directly. It does not render permissive the statutory mandate that the offer be made. Further, Olivero's citation to the August 1982 regulation as providing rates for "unlimited" benefits for the first time is inaccurate in two respects. First, the unlimited portion of the table in N.J.A.C. 11:3-7.4 was not enacted in 1982 but in 1985. See 17 N.J.R. 708 (March 18, 1985). More importantly, the fact that the table specifically detailed unlimited options for the first time in 1985 is no indication that unlimited benefits did not have *590 to be made available in accordance with the statute prior to that date. See Clendaniel v. New Jersey Mfrs. Ins. Co., 96 N.J. 361, 476 A.2d 263 (1984) (holding that prior to 1981, an insurer was "required" to offer the named insured and resident relatives Section 10 benefits); Smith v. Allstate Ins. Co., 203 N.J. Super. 610, 497 A.2d 602 (Law Div. 1985) (holding that income continuation benefits "for as long as the disability persists" were available in 1981). Most likely, the unlimited options contained in the table were viewed by the Commissioner as he viewed the original options in 1973: "It is believed that these ranges of benefits will meet the demand for this additional coverage in most cases." 4 N.J.R. 270 (Nov. 9, 1972); N.J.A.C. 11:3-6.3 (emphasis added). In short, we reject the conclusion reached in Olivero.
Even if this were not the case, Olivero requires (and defendant concedes) that income continuation benefits for as long as the disability persists had to be offered as of 1982. In 1982 and 1983 with her renewal information, Werts, in fact, received a document entitled "form A-993" from defendant. This form set forth a schedule of Added Personal Injury Protection benefits and included the following information:
Broader forms of Added Personal Injury Protection are available on a refer to company basis.

Below is a special order form for your use in adding or changing Added PIP. If any changes are to be made, Part D must be completed. If Added PIP is desired for resident relatives other than a spouse, please also complete Part E.

Return the signed and completed form to New Jersey Manufacturers. If this form is not returned, it will be presumed that you do not desire any changes in your current PIP Coverage or, in the case of new business applicants, it will be presumed that you do not desire Added PIP Coverage.
REQUEST FOR ADDED PIP
A. [] Added PIP coverage is not desired.
B. [] No change is desired in my Added PIP Coverage (not applicable to new business applicants).
C. [] I am interested in broader Added PIP benefits. (other than those indicated above).

*591 D. Please add/amend the Added Pip on my policy for the named insured (including spouse if a resident of the same household). I have selected Option [].
 Do you have any other income Continuation policies? Yes ____ No ____
E. Also include the Added PIP option selected above for the following relatives resident in my household. An additional premium will be charged for each individual listed. I understand that resident relatives not listed here will not have Added PIP coverage.
 Relationship Own Private If yes,
 to Passenger Insurance
 Named Insured Auto? Company and
 Name Policy Number
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 [Emphasis Added].
This language tracks the Commissioner's regulation which states: "Broader forms of personal injury protection benefits are available on a `refer to company' basis." 14 N.J.R. 545 (June 7, 1982); N.J.A.C. 11:3-7.3.
While the Commissioner's language is, in our view, far from a model as far as articulating what is available, we recognize that when legislation directs an agency to prescribe the form and contents of a document, the choice of how to act usually rests with the discretion of the agency, and that "courts normally defer to that choice so long as the selection is responsive to the purpose and function of the agency." Texter v. Human Services Dep't, 88 N.J. 376, 385-86, 443 A.2d 178 (1982). The Commissioner's "broader forms language" meets that standard. That being the case, defendant's offer to Werts, which utilized the very words of the regulation, is unassailable. This is particularly so in light of defendant's added question form which advised Werts and other insureds to check Box C if added PIP benefits other than those beyond the schedule were *592 desired. Even if Werts was in doubt as to the meaning of the phrase "Broader Forms of Added Personal Injury Protection are available on a refer to company basis," the added question clearly advised her that greater coverage could be had. She had only to check Box C to be advised of her options. Obviously, she was not interested in expanding her coverage.
We are thus satisfied that Werts is not entitled to reformation.
Affirmed.
NOTES
[1] N.J.S.A. 39:6A-4 now reads:

Every automobile liability insurance policy, issued or renewed on or after January 1, 1991, insuring an automobile as defined in section 2 of P.L. 1972, c. 70 (C. 39:6A-2) against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide personal injury protection coverage, as defined hereinbelow, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as pedestrian, caused by an automobile or by an object propelled by or from an automobile, to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with the permission of the named insured, and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile.
"Personal injury protection coverage" means and includes:
........
b. Income continuation benefits. The payment of the loss of income of an income producer as a result of bodily injury disability, subject to a maximum weekly payment of $100.00. Such sum shall be payable during the life of the injured person and shall be subject to an amount or limit of $5,200.00, on account of injury to any one person in any one accident, except that in no case shall income continuation benefits exceed the net income normally earned during the period in which the benefits are payable.
[2] N.J.S.A. 39:6A-10 now provides in pertinent part:

Income continuation in excess of that provided for in section 4 must be provided as an option by insurers for as long as the disability persists, up to an income level of $35,000.00 per year, provided that a. the excess between $5,200.00 and the amount of the coverage contracted for shall be written on the basis of 75% of said difference, and b. regardless of the duration of the disability, the benefits payable shall not exceed the total maximum amount of income continuation benefits contracted for.... The Commissioner of Insurance is hereby authorized and empowered to establish, by rule or regulation, the amounts and terms of income continuation insurance to be provided pursuant to this section. [Emphasis added].
[(c)] Death benefit shall be payable provided death occurs within 90 days from date of accident.
[(a)] Subject to 75 percent of the amount of weekly income in excess of $100.00 per week.
[(b)] Subject to 75 percent of the total weekly income.
[3] The regulation was once again recodified in 1987 but the pertinent language remains the same. It can now be found at N.J.A.C. 11:3-7.2(e) and N.J.A.C. 11:3-7.4.